223 A.2d 76.

OPINION TO THE GOVERNOR.

OCTOBER 5, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

OPINION of the judges of supreme court in answer to query of the governor relating to constitutionality of Rhode Island Recreational Building Authority enactments.

October 5, 1966

To His Excellency John H. Chafee
    Governor of the State of Rhode Island
        and Providence Plantations

We have received from Your Excellency a request for our

written opinion, in accordance with the provisions of section 2 of article XII of amendments to the constitution of this state, upon certain questions which you propound in your letter as follows:

"Does the enactment of Chapters 164, Public Laws of 1965 and Chapter 102 of the Public Laws of 1966 by duly recorded two-thirds votes of the legislature and approval by the people of the referenda therein contained render the bonds and powers delegated to the Rhode Island Recreational Building Authority free from objection on constitutional grounds and particularly on the following grounds:

"1. That, notwithstanding a two-thirds vote adopting the act and the amendment thereto, the appropriations, proceeds of bond issues and the pledges of the faith and credit of the state therein made and provided for would be for private, as opposed to public, purposes; or

"2. That the powers delegated to the Authority are an unlawful delegation of legislative power; or

"3. That approval of the referenda therein provided for did not constitute a valid consent of the people to the appropriations, borrowings and pledge of the faith of the state therein made and authorized?"

Our reply thereto follows.

The legislation referred to in your communication above represents a grant of power by the general assembly to the Rhode Island Recreational Building Authority to insure in part the payment of mortgage loans given certain recreational projects. These statutory enactments follow an opinion rendered by us wherein we stated that the power granted to the Rhode Island Industrial Building Authority to insure mortgage loans pursuant to the provisions of G. L. 1956, chap. 34 of title 42, did not include the insuring of a mortgage loan obtained for the construction of a "luxury motor hotel" which contained extensive recreational facilities. See *Opinion to the Governor*, 90 R. I. 135.

In that opinion rendered in 1959 we took judicial notice of the then prevailing common understanding of the people when chap. 34 of title 42 was submitted to them for their approval. Here in 1966 this court is aware that creation of the Recreational Building Authority represents a recognition by many responsible persons in the state of the important part that may be played in the economic development of Rhode Island by many business endeavors which are recreational and not industrial in their nature. It is unquestioned that it is the hope of the sponsors of this legislation that the establishment of the Recreational Building Authority will act as a catalysis and a magnet which will attract tourists to our state with the ensuing financial benefits that will be derived from their presence in Rhode Island. The Justices of this court do not operate in an intellectual vacuum and we are well aware that the suitable financing arrangements that may be available because of this type of legislation with the resultant development of certain qualified commercial enterprises may have as much benefit to our state as many of the industrial activities which have been nurtured and brought to fruition through the establishment of the Industrial Building Authority.

Chapter 164 of P. L. 1965 created the Rhode Island Recreational Building Authority. At a special election held on June 22, 1965, the people gave their constitutionally-required approval to the pledging of the state's credit by the Authority in an amount not to exceed $5,000,000. Chapter 164 is now known as (and hereinafter will be cited as) G. L. 1956, chap. 38 of title 42.

Chapter 102 of P. L. 1966 consists of a series of amendments clarifying the powers of the Recreational Building Authority. It contained the same pledge of the credit of the state as was stated in the original act. This pledge was re-submitted to the people and the referendum was overwhelmingly approved at a special election held on June 21, 1966.

A comparison of the provisions of chap. 38 as amended by P. L. 1966, chap. 102, with those of chap. 34 of title 42 shows that they are substantially similar. The identical questions propounded by Your Excellency as to the Recreational Building Authority were asked of the Justices of this court by the then governor of this state as they applied to the Rhode Island Industrial Building Authority. In our answer in *Opinion to the Governor*, 88 R. I. 202, we found the bonds and powers delegated the Industrial Building Authority were free from any objection on constitutional grounds. What we said relative to the Industrial Building Authority applies with equal force to the Recreational Building Authority. We can perceive no constitutional objections to the enactments which create and give vitality to the Recreational Building Authority.

As Your Excellency is well aware, this court has in two recent opinions found fault with the constitutional sufficiency of the propositions submitted to the people for the obtaining of their consent as is required by the provisions of art. XXXI, sec. 1, of the amendments to our state constitution. See *Opinion to the Governor*, 99 R. I. 351, 208 A.2d 105, and *Opinion to the Governor*, 100 R. I. 175, 212 A.2d 64. In each of these opinions we found that the propositions submitted to the people for their approval failed to inform the people of the nature and extent of the pledge of the state's credit. The former opinion concerned the Rhode Island Turnpike and Bridge Authority while the latter concerned the enlarging of the powers of the Industrial Building Authority to insure mortgage loans on new machinery and equipment.

In the Turnpike opinion we faulted the sufficiency of the proposition submitted to the people because there was nothing in the language of the proposition to alert them that, in addition to pledging the credit of the state in the sum of $17,500,000, the general assembly was asking for their assent to the assumption of many more millions of dollars, the

discharge of which was guaranteed by a pledge of state property. We found the proposition which purported to expand the powers of the Industrial Building Authority to be deficient because, while it did inform the voter that his assent would permit the Authority to increase the aggregate amount of mortgages insured by it from $30,000,000 to $40,000,000, it failed to convey to the voter the information that the state's credit would be pledged for this additional $10,000,000.

The referendum provisions of each of the acts concerning the Recreational Building Authority, however, suffer from no such infirmities and are in compliance with the intendment of the aforementioned constitutional requirements. The constitution requires that the express consent of the people be given to this legislative power to pledge the credit of the state "for the payment of the obligations of others." This necessary consent must be obtained from the electorate as a whole. The submission must clearly disclose to the ordinary voter that an affirmative vote will authorize the pledging of the credit of the state and the extent to which that credit will be pledged. An examination of the referendum provisions of each of the acts referred to in your letter discloses that they satisfy the constitutional mandate particularly as it is set forth in *Opinion to the Governor*, 88 R. I. 202 at page 206.

The people by their adoption of art. XXXI of the amendments to our state constitution have displayed a demonstrated concern that the state's credit be pledged for only the most exceptional and deserving causes. Whenever they give their permission to the general assembly to exercise this power, it is imperative that it be employed within the meaning and spirit of the legislative act involved. In *Opinion to the Governor*, 90 R. I. 135, 137, we pointed out that the legislation which created the Industrial Building Authority was a novel and extraordinary legislative venture

because it bordered on, if not actually trespassed upon, a field of endeavor which is usually left open to the free interplay of private enterprise. So, too, the legislation concerning the Recreational Building Authority is unique. It represents a partnership between certain private individuals or groups and the state government in a joint undertaking to preserve, safeguard and enhance the economic welfare of the state of Rhode Island in the years that are to come.

We would be remiss in replying to the questions as framed by Your Excellency if we failed to observe that the proper administration of the functions of the Rhode Island Recreational Building Authority rests upon its members giving the state's guarantee only to those loans which are in accord with the letter and spirit of the consent given by the people for the pledging of the state's credit in this new field of commercial endeavor.

THOMAS H. ROBERTS
THOMAS J. PAOLINO
WILLIAM E. POWERS
ALFRED H. JOSLIN
THOMAS F. KELLEHER