OPINION TO THE GOVERNOR.

NOVEMBER 19, 1959.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

OPINION TO GOVERNOR in answer to request for interpretation of Rhode Island industrial building authority act and whether under act the authority had the right to insure payment of a mortgage loan to be used for the construction of a luxury motor hotel. Opinion rendered negative to question propounded.

November 19, 1959

To His Excellency, Christopher Del Sesto
   Governor of the State of Rhode Island
      and Providence Plantations

We have received from Your Excellency a request for our written opinion in accordance with the provisions of section 2 of article XII of amendments to the constitution of this state upon the following question:

"Does the Rhode Island Industrial Building Authority have the right, under the provisions of Chapter 91 of the 1958 Public Laws of Rhode Island, to insure the payment of a mortgage loan within the limitations of the aforesaid Chapter 91 for a proposed project hereinafter described, if said Authority should determine that the proposed new building project (a) would tend to provide gainful employment for the people of Rhode Island, (b) increase the tax base of the economy, and (c) diversify and expand industry?"

Your letter further describes such proposed new building as follows:

"The proposed new project in question is a five-story, luxury motor hotel to be located on a site fronting on Narragansett Bay on Narragansett Boulevard in the City of Cranston. In addition to 129 rentable units, consisting of double rooms and sample rooms designed to serve both the traveler and the communities in the State of Rhode Island, this building project will contain the following:

"Function Rooms (for banquets and conventions —accommodations for 500 people).

"Formal Dining Room (accommodations for 150 people).

"Coffee Shop (accommodations for 58 people).

"News Stand and Gift Shop, Barber Shop and Beauty Parlor.

"Parking facilities for approximately 170 cars.

"The hotel recreational facilities will consist of a swimming pool, cabanas, children's play area, boat dock, formal gardens.

"The maintenance of the project will require approximately 125 employees to constitute a permanent staff."

Our consideration of the question has been delayed pending the receipt of a brief in support of an affirmative answer by counsel for the Rhode Island Industrial Building Authority which Your Excellency requested us to consider. We allowed such brief to be filed and also another of like view by counsel for certain interests who are contemplating the erection of a sports stadium primarily for major league baseball. Thereafter we granted permission to counsel for the Business Development Company of Rhode Island, a private corporation organized to develop and advance the business prosperity and economic welfare of the state, to file a brief in support of a negative answer. The delay occasioned by the granting of those requests has been amply compensated for by reason of the assistance we have received from such briefs. The question propounded is one of importance and therefore is deserving of the deliberate and mature consideration that customarily results from the advocacy of adversary views.

Chapter 91 is novel legislation. It borders closely, if it does not actually trespass, upon a field of enterprise which the state ordinarily refrains from invading. That field is normally left open to the free interplay of private forces. Only in the most unusual circumstances and in order to safeguard the economic welfare of the state should the leg-

islature venture the public revenue in such enterprise by directly or indirectly pledging the credit of the state. In this instance it has done so with the express approval of the electors given at the general election on November 4, 1958 as is required by article XXXI, section 1, of amendments to the constitution of the state.

In our opinion legislation of this character must be construed strictly. By that constitutional provision the people have demonstrated in no uncertain terms their jealous regard for the power to pledge the state's credit. Whenever they relax that jealousy and permit the general assembly to exercise such forbidden power it may be lawfully done only within the strict letter of the legislative act referred to the people for their approval.

One of the provisions of P. L. 1958, chap. 91, sec. 7, which was thus submitted to the people reads as follows:

> "3. *'Industrial project'* shall mean any new building or other real estate improvement in Rhode Island and, if a part thereof, the land upon which they may be located, and all real properties deemed necessary to their use by any industry for the manufacturing, processing or assembling of raw materials or manufactured products, or any new building which the authority determines will tend to provide gainful employment for the people of Rhode Island, increase the tax base of the economy and diversify and expand industry so that periods of large scale unemployment and distressed times will be avoided. An industrial project as defined herein shall cost more than one hundred thousand ($100,000.00) dollars."

How shall that language be construed? There is no doubt that it is subject to two possible constructions. One, as contended for by counsel for the Authority, is that by reason of the use of the disjunctive "or" the legislature intended to vest the Authority with unlimited discretion to apply the act to "any new building" regardless of its intended use, provided it tended in the opinion of the Authority

to provide gainful employment, to increase the tax base, and to diversify and expand industry. The other construction would narrowly limit the Authority to projects of manufacturing industry, the key words requiring such limited construction being "use by any industry for the manufacturing, processing or assembling of raw materials or manufactured products * * *."

This latter construction is strict and is designed to limit the power of the Authority notwithstanding the broad language which follows the disjunctive "or." On the other hand the former construction is so liberal as to leave the limiting language which precedes the disjunctive without any effect. Indeed, if the legislature intended to vest the Authority with unlimited discretion then there was no useful purpose to be served by such limiting language. Ordinarily we do not by construction thus strike from an act plain and definite words which the legislature has specifically used presumably for some purpose. *Collins* v. *Board of Canvassers & Registration,* 57 R. I. 140. See also *Carlson* v. *McLyman,* 77 R. I. 177.

After careful consideration and bearing in mind as we think we must the extraordinary nature of the legislation in question here, we are of the opinion that it must be given a strict construction. On this view we cannot disregard the language which precedes the disjunctive "or." On the contrary the applicable rules of statutory construction require that we give that language primary importance and associate with it rather than differentiate from it the language which follows. *Taft* v. *Zoning Board of Review,* 75 R. I. 117; *Bonanno* v. *Bollo,* 72 R. I. 278; *Long* v. *Fugere,* 56 R. I. 137.

Such a construction is in conformity with the principle of *ejusdem generis* which in substance declares that where

words of enumeration are followed by words of more general import such latter words are governed by the former and are to be construed as of like import. See 28 C.J.S. Ejusdem, p. 1049. "A consideration underlying the rule is that if the Legislature had intended the general words to be used in their unrestricted sense there would have been no necessity or reason for enumeration of the particular persons or things." *State* v. *Certain Contraceptive Materials,* 126 Conn. 428, 433. Under this rule the words following the disjunctive in the legislative provision in question here must therefore be construed to mean any new building "for the manufacturing, processing or assembling of raw materials or manufactured products * * *." As thus construed the proposed new luxury motor hotel project cannot be reasonably deemed an "Industrial project" within the meaning of the legislative definition of that term in the above-quoted P. L. 1958, chap. 91, sec. 7 (3).

We may add that, aside from canons of statutory construction, the above construction rather than the contrary one more closely coincides with what was the common understanding of the people when the act was submitted to them for their approval. At that time it was generally understood that by means of chapter 91 the legislature desired to assist in the promotion of new manufacturing plants within the state.

In the special circumstances here, where the legislative process was exercised by the general assembly in conjunction with and was dependent upon a constitutional popular referendum, we think we should take judicial notice of such prevailing opinion. In doing so we are more firmly convinced that the strict construction hereinabove given to the legislative definition of "Industrial project" is the correct one.

Therefore our answer to the question propounded is in the negative.

FRANCIS B. CONDON
THOMAS H. ROBERTS
THOMAS J. PAOLINO
WILLIAM E. POWERS
G. FREDERICK FROST

Amicus Curiae:

*Coleman B. Zimmerman.*

*Edwards & Angell, Charles P. Williamson, John V. Kean.*

*Walter I. Sundlun.*