212 A.2d 64.
OPINION TO THE GOVERNOR.
JULY 15, 1965 AS OF JULY 14, 1965.
PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

July 14, 1965

To His Excellency John H. Chafee
    Governor of the State of Rhode Island
        and Providence Plantations.

We have received from Your Excellency a request for our written opinion in accordance with the provisions of sec. 2

of art. XII of amendments to the constitution of this state upon five questions which relate to the power of the Rhode Island Industrial Building Authority, hereinafter referred to as the Authority, to insure payments of mortgage loans under the provisions of chap. 34 of title 42 of the general laws, as amended, the proceeds of which are to be used for the purchase of new machinery and equipment. The five questions are set out verbatim in an appendix to this opinion.

In your letter we are informed that these questions arise out of the filing of applications with the Authority by various manufacturers and lending institutions for the insurance of mortgage payments to be incurred in financing new machinery and equipment in this state. We are therein further informed with respect to all such applications that the Authority "has determined that such new machinery and equipment will tend to provide gainful employment for the people of Rhode Island, will tend to increase the tax base of the economy, and will tend to diversify and expand industry so that periods of large scale unemployment and distressed times will be avoided." We are informed further that as to all such applications the Authority has determined "that the building in which such new machinery and equipment is to be installed, as well as the machinery and equipment itself, will be used for the manufacturing, processing or assembling of raw materials or manufactured products or for the providing of research facilities in connection therewith." We infer from the language quoted above that the questions submitted are to be answered in the light of the determination by the Authority that essential conditions precedent to affirmative action by it on such applications have been met. G. L. 1956, §42-34-6.

Question numbered 1 asks: "Did the approval of the proposition contained in Section 1 of Chapter 70 of the Public Laws of 1964 constitute a valid consent of the people

to the provisions of said Chapter?" Section 1 of said chap. 70 reads in pertinent part: " 'Shall the action of the general assembly by an act passed at the January session, 1964, amending subsections 1 and 3 of section 42-34-6 and 42-34-10 of the general laws, to include in the definition of "industrial project" research and warehousing facilities and to include in the definition of "cost of project" machinery and equipment, and to authorize the authority to insure a principal obligation attributable to machinery and equipment not to exceed eighty (80%) per cent of the cost of such machinery and equipment, subject to certain limitations, and to increase the maximum aggregate amount of principal obligations of all mortgages insured by the authority outstanding at any one time from thirty million ($30,000,-000.) dollars to forty million ($40,000,000.) dollars, be approved?' "

The proposition set out in sec. 1 of chap. 70 submits to the people for their approval or rejection a proposed legislative grant of power to the Authority to insure in part the payment of mortgage loans obtained for the purpose of acquiring new machinery and equipment. We assume, therefore, that Your Excellency is inquiring whether the vote of the people in favor of that proposition in a special election held on June 2, 1964 gave the "express consent of the people" to legislation which purports to "pledge the faith of the state for the payment of the obligations of others" contemplated by the provisions of sec. 1 of art. XXXI of the articles of amendment to the constitution of this state.

We conclude that the inquiry whether that vote gave the "express consent of the people" thereto, as is required under the constitutional limitation on the legislative power to pledge the faith of the state, goes to the sufficiency of the proposition as submitted to inform the people of the nature and extent of the pledge they were asked to approve.

In 1958 the then Governor of this state, propounding a series of questions to the Justices of this court concerning the legislation creating the Authority and conferring upon it power to pledge the credit of the state, inquired whether the consent then given by the people was an express consent within the constitutional limitation. The Justices of this court, stating that sec. 1 of art. XXXI of the amendments prohibited the general assembly from pledging the faith of the state "unless the express consent of the people is first had and obtained," went on to say: "This consent must of course be an intelligent consent. *That is, the people must be clearly informed of the nature and extent of the pledge which the general assembly proposes to authorize.* We think the question to be propounded to the people in accordance with the provisions of section 1 of the act is sufficiently informative to meet such requirement * * *." (italics supplied) *Opinion to the Governor,* 88 R. I. 202, 206.

Subsequently, the Justices of this court again were asked to state their opinion as to the scope of the power given the Authority. In answer to a pertinent inquiry we stated that the power granted to insure the payment of mortgage loans did not include the insuring of mortgage loans obtained to build a luxury motor hotel, the express consent of the people having been given only to the insurance of the payment of mortgages obtained for industrial projects. *Opinion to the Governor,* 90 R. I. 135.

*In that opinion we said that the constitution limits the power of the legislature to pledge the credit of the state and that where an exercise of such power is consented to by the people, it is to be exercised "only within the strict letter of the legislative act referred to the people for their approval." Clearly, these opinions recognize that the "express consent" to which reference is made in the constitutional limitation can be obtained only when the submission

of the proposition to the people informs them as to the nature and extent of the pertinent legislation and clearly and reasonably discloses to them the nature and extent of the power to pledge the state's credit for which the consent is sought.

We are constrained then to conclude that the submission of the instant proposition did not meet the constitutional requirement relating to obtaining the consent of the people as stated by this court in those prior opinions. We are unable to perceive anything therein that would suffice to inform the voters that by approving the amendatory provisions of chap. 34 of title 42 they would, in effect, extend the power of the Authority to pledge the credit of the state to the payment of mortgages by it insured which were obtained to finance the acquisition of machinery and equipment. The submission clearly discloses the grant of power to the Authority to insure the mortgages contemplated by the act in an additional aggregate amount of $10,000,000. However, no reference is contained in the submission to the legal effect of such grant of power to the Authority, that is, its effect as consenting to an extension of the power of the Authority to pledge the credit of the state from a total of $30,000,000 to a total of $40,000,000.

Whether a submission of a proposition is adequate to inform the people clearly as to the intent of the legislature to pledge the credit of the state as well as the nature and extent of such grant is to be determined on whether the submission will disclose to the ordinary voter that such was the legislative intent. Such a submission will not be deemed to be adequate merely because it reveals an intention to extend the Authority's power to pledge the credit of the state when read by persons versed in the arts of commerce and finance. The constitution requires the express consent of the people to the legislative grant of power to the Authority to pledge the credit of the state, which in

the instant case would increase the aggregate amount in which the state's credit may be pledged. The necessary consent must be obtained from the electorate as a whole and, to meet the constitutional requirement, the submission must clearly disclose to the ordinary voter that an approval will empower the Authority to pledge the credit of the state and the extent to which that credit may be pledged.

It being our opinion that the submission of the proposition on June 2, 1964 was inadequate in that it did not inform the average voter that the legislative intent was to grant the Authority increased power to pledge the state's credit, we answer the first question in the negative. It is our view that the affirmative vote given the proposition by the people on June 2, 1964 did not constitute the giving of the express consent of the people to the legislative grant of the power to the Authority to pledge the credit of the state in any amount exceeding $30,000,000. We reiterate that we take this view because the submission of the proposition did not reveal that an affirmative vote would have such effect on the finances of the state government. Because we take this view, we are persuaded that no useful purpose will be served if the court goes on to answer specifically Your Excellency's questions numbered 2, 3, 4, and 5.

The purpose of the legislation under consideration is well known to this court. It is designed to promote and maintain our economy by pledging the credit of the state to the payment of mortgages made pursuant to its provisions. We are aware also that the situation with which we are confronted is one involving a constitutional limitation on the exercise of legislative power which is not to be defeated by resort to liberal construction, so called. In the circumstances we repeat that our decision as to the effect of the inadequate proposition submitted to the electorate on June 2, 1964 neither limits nor impairs the power of the Authority to insure mortgages held by it under the terms

of the legislation as it stood prior to the amendatory act of 1964, that is, its power under the pertinent provisions of chap. 91 of P. L. 1958.

FRANCIS B. CONDON

THOMAS H. ROBERTS

THOMAS J. PAOLINO

WILLIAM E. POWERS

ALFRED H. JOSLIN

## APPENDIX

"1. Did the approval of the proposition contained in Section 1 of Chapter 70 of the Public Laws of 1964 constitute a valid consent of the people to the provisions of said Chapter?

"2. Does the Rhode Island Industrial Building Authority, pursuant to Sections 42-34-6 and 42-34-10 of the General Laws, as amended, and within the limitations of Chapter 42-34, have the right to insure the mortgage payments of a mortgage loan on new machinery and equipment to be installed in a new building, where the Authority is also to insure mortgage payments on such building pursuant to said Sections 42-34-6 and 42-34-10 and where such machinery and equipment is to be installed within two years after the completion of such building or more than two years after completion of such building but within two years after the execution of a commitment agreement signed by all of the interested parties?

"3. Does the Rhode Island Industrial Building Authority, pursuant to Sections 42-34-6 and 42-34-10 of the General Laws, as amended, and within the limitations of Chapter 42-34, have the right to insure the mortgage payments of a mortgage loan on new machinery and equipment to be installed in a building where the Authority is already insuring mortgage payments on such building pursuant to said Sections 42-34-6 and 42-34-10 and where such machinery and equipment is to be installed within two years after the completion of such building or more than two years

after completion of such building but within two years after the execution of a commitment agreement signed by all of the interested parties?

"4. Does the Rhode Island Industrial Building Authority, pursuant to Sections 42-34-6 and 42-34-10 of the General Laws, as amended, and within the limitations of Chapter 42-34, have the right to insure the mortgage payments of a mortgage loan on new machinery and equipment to be installed in a new building where it is not being requested that the Authority insure any mortgage payments with respect to such building and where such machinery and equipment is to be installed within two years after the completion of such building or more than two years after completion of such building but within two years after the execution of a commitment agreement signed by all of the interested parties?

"5. Does the Rhode Island Industrial Building Authority, pursuant to Sections 42-34-6 and 42-34-10 of the General Laws, as amended, and within the limitations of Chapter 42-34, have the right to insure payments of a mortgage loan on new machinery and equipment to be installed in a building which has been formerly occupied and used?"