Arakel A. MIKAELIAN

v.

DRUG ABUSE UNIT et al.

No. 83–113–Appeal.

Supreme Court of Rhode Island.

Nov. 26, 1985.

George E. Furtado, Mark Sjobert, Lovett Morgera Schefrin & Gallogly, Ltd., Providence, for plaintiff.

Arlene Violet, Atty. Gen., Linda S. MacDonald, Sheila Tobie Swan, Sp. Asst. Attys. Gen., for defendant.

## OPINION

**WEISBERGER, Justice.**

This case comes before us on appeal from a judgment of the Superior Court dismissing the plaintiff's complaint in response to a motion for judgment on the pleadings filed pursuant to Rule 12(c) of the Superior Court Rules of Civil Procedure. We affirm the judgment. The facts, insofar as pertinent to this appeal, are as follows.

On or about September 2, 1976, plaintiff was employed by the State of Rhode Island as a member of the Drug Abuse Unit of the Department of Mental Health, Retardation, and Hospitals (DMHRH). On that date plaintiff, according to his amended

complaint, was discharged by the director of the department or his representative. The plaintiff alleged that this discharge was unjust and in violation and breach of a collective-bargaining agreement between DMHRH and Council 70 of the American Federation of State, County, and Municipal Employees (AFSCME). In a separate count of his amended complaint, plaintiff alleged that Richard Snyder, D.O., and Haig Raky, who were agents, servants and employees of DMHRH, had on March 7 and March 18, 1975, respectively, published a memorandum and a letter containing false and defamatory statements concerning plaintiff's honesty in respect to the purchase or non-purchase of a hot plate. The memorandum and the letter were alleged by plaintiff to have been placed in his personnel file.

On August 30, 1978, plaintiff filed his original complaint in the Superior Court naming as defendants the Drug Abuse Unit, DMHRH, the director of DMHRH, then Joseph J. Bevilacqua, and the State of Rhode Island. The defendants answered the complaint on September 19, 1978, denying the material allegations and asserting the defenses of immunity and failure to state a claim upon which relief could be granted. On November 19, 1982, defendants moved to amend their answer by asserting the defense of the statute of limitations in respect to the defamation count and further sought to assert plaintiff's failure to exhaust his administrative remedies as a condition precedent to bringing action in the Superior Court for wrongful termination of his employment. This motion was granted on November 30, 1982, and an order reflecting the granting of the motion was filed December 2, 1982.

Thereafter, the case came on for trial before another justice of the Superior Court on December 3, 1982. At that time counsel for plaintiff asked that the order allowing defendants to amend their answers be vacated. The trial justice declined to grant this request, citing, among other reasons, the doctrine of law of the case. At that point plaintiff moved to amend his complaint, and the trial justice, after hearing arguments, granted that motion. On that same date, counsel agreed that the case might be determined solely on the basis of the pleadings. Counsel also stipulated that the collective-bargaining agreement might be introduced as an exhibit and could be considered by the court in determining the motion for judgment on the pleadings.

In support of his appeal, plaintiff raises three issues that will be dealt with in the order of their importance to the opinion rather than in the order in which they are presented in plaintiff's brief.

## I

## DID THE MOTION JUSTICE ERR IN ALLOWING DEFENDANTS TO AMEND THEIR ANSWER IN RESPECT TO THE STATUTE OF LIMITATIONS AND THE DOCTRINE OF EXHAUSTION OF ADMINISTRATIVE REMEDIES?

There is no question that a justice of the Superior Court allowed defendants to amend their answer approximately four years after the complaint had been filed. The order allowing said amendment was entered one day prior to the date upon which the case had been noticed or scheduled for trial. We have frequently held that liberality in allowing amendments is to be favored. *Inleasing Corp. v. Jessup*, —— R.I. ——, 475 A.2d 989 (1984); *Ricard v. John Hancock Mutual Life Insurance Co.*, 113 R.I. 528, 324 A.2d 671 (1974); *Wilkinson v. Vesey*, 110 R.I. 606, 295 A.2d 676 (1972). After reviewing prior case law, we stated in *Inleasing Corp.*, that we would permit amendments to pleadings even after trial "absent a showing of extreme prejudice." —— R.I. at ——, 475 A.2d at 993. We also reiterated in that case that the granting or denial of such a motion to amend a pleading pursuant to the provisions of Super.R.Civ.P. 15(a) is a matter within the sound discretion of the trial justice; and when he has acted in the exercise of his discretion, his ruling should not be dis-

turbed on review in the absence of a clear showing that he abused his discretion. *Inleasing Corp.,* — R.I. at —, 475 A.2d at 992.

In the case at bar there has been no showing of either extreme prejudice or abuse of discretion on the part of the motion justice or the trial justice. It is significant to note that plaintiff did not request a continuance following the granting of the motion to amend; and upon appearance before the trial justice, no relief was sought save the amendment of plaintiff's complaint, and this relief was granted.

Consequently, we are of the opinion that the motion justice did not commit reversible error in allowing defendants to amend their answer to raise the defenses of the statute of limitations and the doctrine of exhaustion of administrative remedies.

## II

DID THE TRIAL JUSTICE ERR IN DETERMINING THAT THE STATUTE OF LIMITATIONS HAD RUN IN RESPECT TO THE DEFAMATION COUNT?

The trial justice held that a one-year period of limitations applied in this case pursuant to the provisions of G.L.1956 (1969 Reenactment) § 9–1–14, as amended by P.L.1976, ch. 188, § 1, which provides in pertinent part, "Actions for words spoken shall be commenced and sued within one (1) year next after the words spoken, and not after." The trial justice determined that this portion of the statute was controlling even though the pleadings in the case and the exhibits that were made a part thereof indicated that these defamatory statements were made in writing and therefore constituted libel as opposed to slander under the general definition of these two methods of defamation. Prosser and Keeton, *The Law of Torts* § 112 (5th ed. 1984), states that libel was originally concerned with written or printed words whereas slander was usually of an oral or spoken character. The origin of libel was criminal whereas slander (unless it consisted of sedition, blasphemy, or a breach of the peace) was civil in nature. The treatise goes on to assert that libel has been extended to include defamation by motion picture, signs, and statutes, and arguably through radio and television. *Id.* However, for our purposes it is not necessary to pick our way among the thickets of the overlap of the torts of libel and slander since the plain wording of the statute provides us with ample guidance.

We have consistently held that it is the obligation of the court to construe a statute in accordance with the intent of the Legislature when that intent is discernible from the words of the statute. *Bassett v. DeRentis,* — R.I. —, 446 A.2d 763 (1982); *Gott v. Norberg,* — R.I. —, 417 A.2d 1352 (1980); *State v. Duggan,* — R.I. —, 414 A.2d 788 (1980). When the wording of a statute is free from ambiguity, we must give to those words their plain and ordinary meaning. *In re LaFreniere,* — R.I. —, 420 A.2d 82 (1980); *Roadway Express, Inc. v. Rhode Island Commission for Human Rights,* — R.I. —, 416 A.2d 673 (1980); *Bailey v. Baronian,* 120 R.I. 389, 394 A.2d 1338 (1978). Moreover, it is our obligation to give effect to all portions of a statute, and we shall not delete or ignore words as surplusage when reading the statute as a whole. *Rhode Island Chamber of Commerce v. Hackett,* 122 R.I. 686, 411 A.2d 300 (1980); *Flanagan v. Pierce Chevrolet, Inc.,* 122 R.I. 596, 410 A.2d 428 (1980); *Chang v. University of Rhode Island,* 118 R.I. 631, 375 A.2d 925 (1977); *Opinion to the Governor,* 90 R.I. 135, 155 A.2d 602 (1959); *Casey v. Willey,* 89 R.I. 87, 151 A.2d 369 (1959).

In the case at bar the Legislature has specifically used the term "words spoken." These are plain and unambiguous words that should not be sought to be construed in relation to the somewhat tortuous history of the distinction between libel and slander. The Legislature would be presumed to know that generally slander deals with the spoken word and libel deals with the

written word, in spite of the possible overlap in certain areas. However, the Rhode Island Legislature, in using the term "words spoken," should not be construed as having selected these words inadvertently or without specific intent. In the attempt to give these words their plain and ordinary meaning and to give effect to their use by the Legislature, we can only conclude that the Legislature meant what it said without equivocation. Consequently, "words spoken" do not include written material.

Therefore, the trial justice erred in applying a one-year statute of limitations to the instant complaint. However, § 9–1–14 further provides as follows: "Actions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall have accrued, and not after." We have construed the term "injuries to the person" rather comprehensively. In *Commerce Oil Refining Corp. v. Miner*, 98 R.I. 14, 199 A.2d 606 (1964), we applied the definition of injury to the person to an action for malicious prosecution. In so doing, we stated:

"It is then our conclusion that the phrase 'injuries to the person' as used in the instant statute is to be construed comprehensively and as contemplating its application to actions involving injuries that are other than physical. Its purpose is to include within that period of limitation actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law. Such rights, of course, are to be distinguished from those which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property." *Id.* at 20–21, 199 A.2d at 610.

Applying this principle to an action for libel, we conclude that the right of one to be free from defamatory statements would be among those rights to which one is entitled by reason of being a person, as opposed to a right arising out of contract or property. Therefore, we are of the opinion that the three-year statute of limitations relating to injuries to the person would be applicable to an action for written defamation or libel. *See Walden III, Inc. v. State of Rhode Island*, 576 F.2d 945 (1st Cir.1978); *Partin v. St. Johnsbury Co.*, 447 F.Supp. 1297 (D.R.I.1978).

■ On a motion for judgment on the pleadings, the court would necessarily apply the statute of limitations using as a basis allegations of the complaint. The amended complaint alleges that the defamatory memorandum written by Richard Snyder, D.O., was written and published on March 7, 1975. It further alleges that the defamatory letter written by Haig Raky was written and published on or about March 18, 1975. No one disputes that the original complaint was filed on August 30, 1978. Most jurisdictions have determined that a statute of limitations in respect to libel would begin to run from and after the date of publication. *See, e.g., Wilson v. Retail Credit Co.*, 438 F.2d 1043 (5th Cir. 1971) (applying Mississippi law); *Brown v. Chicago, Rock Island & Pacific Railroad Co.*, 212 F.Supp. 832 (W.D.Mo.), *aff'd*, 323 F.2d 420 (8th Cir.1963) (applying Missouri law); *McGuiness v. Motor Trend Magazine*, 129 Cal.App.3d 59, 180 Cal.Rptr. 784 (1982); *Belli v. Roberts Brothers Furs*, 240 Cal.App.2d 284, 49 Cal.Rptr. 625 (1966); *Russell v. McMillen*, 685 P.2d 255 (Colo.Ct. App.1984); *Caslin v. General Electric Co.*, 608 S.W.2d 69 (Ky.Ct.App.1980); *Toomey v. Farley*, 2 N.Y.2d 71, 156 N.Y.S.2d 840, 138 N.E.2d 221 (1956); *Rand v. New York Times Co.*, 75 A.D.2d 417, 430 N.Y.S.2d 271 (1980); *Dailey v. Smiley*, 65 A.D.2d 915, 410 N.Y.S.2d 468 (1978).

California, among other jurisdictions, has recognized a discovery exception to the ordinary rule that the statute of limitations would generally run from the date of publication. This exception was applied in *Manguso v. Oceanside Unified School District*, 88 Cal.App.3d 725, 152 Cal.Rptr. 27 (1979). However, under California decisions, such

a special defense to the statute of limitations must be specifically pleaded in order to show " '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Id.* at 728, 152 Cal.Rptr. at 29. A similar rule is applied by California in personal-injury cases in which the discovery rule is sought to be invoked. *See Saliter v. Pierce Brothers Mortuaries*, 81 Cal.App.3d 292, 146 Cal.Rptr. 271 (1978). In the case at bar, it is extremely doubtful that plaintiff effectively raised the discovery issue in the posture in which the case was presented to the trial justice.

In his brief plaintiff argues that this court should remand the case to the trial justice for a determination of whether the statute should begin to run when the defamatory material was published or at a later date, namely, February 1976, when plaintiff states in his brief that he discovered the material. The short answer to this argument is that the trial justice by agreement of the parties determined this case on a motion for judgment on the pleadings. The pleadings do not make any mention of the date of discovery of the defamatory material but only the dates of writing and publication. In any event, although we are mindful of the fact that some jurisdictions in addition to California have adopted a discovery rule for libel and slander, *see, e.g., Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill.2d 129, 334 N.E.2d 160 (1975); *Sears, Roebuck and Co. v. Ulman*, 287 Md. 397, 412 A.2d 1240 (1980), we see no reason on the question presented to the trial justice in the case at bar to depart from the more traditional rule that the right of action in a defamation case accrues on the date of publication. We would reserve deciding such an issue until a case squarely presents a compelling fact situation to us. Consequently, even though a three-year statute of limitations was properly applicable in the instant case, the trial justice did not err in dismissing the count for defamation since more than three years had

elapsed subsequent to the date of publication and prior to the filing of the complaint.

## III

## DID THE TRIAL JUSTICE ERR IN DISMISSING THE UNJUST TERMINATION COUNT BECAUSE OF THE FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES?

■ The complaint in this case clearly discloses that plaintiff was an employee of the State of Rhode Island in a department wherein the collective-bargaining representative was Council 70 of the AFSCME. Further, counsel stipulated to the introduction on the motion for judgment on the pleadings of a copy of the collective-bargaining agreement then in force. It may well be that the introduction of the collective-bargaining agreement by consent of the parties converted the motion in regard to this count into a motion for summary judgment since the court was invited by the parties to consider a matter that was outside the scope of the pleadings. *See Ewing v. Frank*, 103 R.I. 96, 234 A.2d 840 (1967). This procedure permitted the trial justice to determine, after a review of the entire record, whether a genuine, material, factual issue existed. In the absence of such a finding, the court could determine whether one of the parties was entitled to judgment as a matter of law. *See, e.g., Ludwig v. Kowal,* — R.I. —, 419 A.2d 297 (1980); *Doyle v. State*, 122 R.I. 590, 411 A.2d 907 (1980); *Warren Education Association v. Lapan*, 103 R.I. 163, 235 A.2d 866 (1967). Applying these principles to the case at bar, the trial justice did examine the entire record, including depositions to which reference was made by the parties. It is also of importance to note that at no time did plaintiff request an evidentiary hearing or assert that a genuine issue of material fact existed that could not be determined within the framework of the examination of the pleadings and supporting material already on record.

The collective-bargaining agreement sets forth in great detail the grievance proce-

dure available to plaintiff in the event plaintiff was aggrieved by an action of his departmental supervisors. This grievance procedure prescribed a number of steps through which a grievance would proceed, culminating in arbitration in the event that earlier proceedings were unavailing. In addition, plaintiff, as a merit-system employee, had the option of proceeding through the appeal mechanism set forth in G.L.1956 (1984 Reenactment) §§ 36–3–10 and 36–4–40.

Moreover, the record before the trial justice clearly set forth that plaintiff had exhausted neither of these administrative routes to relief. His attorney stated to the trial justice, and now argues in his brief that "the grievance was lost" because of a jurisdictional dispute between council 24 and council 70 of the same union. Assuming, without deciding, that this rather lame explanation was even properly before the trial justice, we feel that it cannot be said to raise a genuine issue of material fact. One who seeks judicial relief under the doctrine of exhaustion of administrative remedies must do more than speak to his shop steward and sit idly by while nothing happens. Unquestionably, plaintiff did not claim in his pleadings, nor does he claim now, that he took any action in respect to attempting to appeal his dismissal to the Personnel Appeal Board, an alternative remedy to which he was concededly entitled, in the event that he was unable to achieve satisfaction through the collective-bargaining-agreement procedures.

The record before the trial justice did not create a genuine issue of material fact concerning the exhaustion of administrative remedies and clearly disclosed that the plaintiff had not exhausted either of the administrative remedies open to him. Consequently, the trial justice was correct in dismissing the unjust-termination count of the complaint.

For the reasons stated, the appeal of the plaintiff is denied and dismissed, the judgment of the Superior Court is affirmed, and the papers in the case may be remanded to the Superior Court.

BEVILACQUA, C.J., did not participate.