**In re ADVISORY OPINION TO THE HOUSE OF REPRESENTATIVES (GENERAL OBLIGATION BONDS).**

No. 91–220–M.P.

Supreme Court of Rhode Island.

Nov. 22, 1991.

Andrew B. Prescott, Peter J. McGinn, Tillinghast, Collins & Graham, Edward M.

Fogarty, Office of the Speaker, Providence, for plaintiff.

Kathleen Manahgan, Corcoran, Peckham & Hayes, Caroline Cole Cornwell, Sp. Asst. Atty. Gen., Michael A. Bucci, Executive Council to the Governor, Newport, amicus curiae.

To the Honorable, the House of Representatives of the State of Rhode Island and Providence Plantations:

We have received from Your Honors a request seeking the advice of the justices of this court in accordance with article X, section 3, of the Rhode Island Constitution.[1] Your request raises two specific questions relating to proposed legislation concerning the issuance of general obligation bonds under authority of P.L.1989, ch. 377. The questions posited are

"1. Would the enactment of 91–S 620 (91–H 5850) allow the state of Rhode Island to issue general obligation bonds under the authority of 1989 R.I. Public Laws, Ch. 377 or would such issuance violate Art. 6, section 16 of the Rhode Island Constitution?

"2. Given the approval of the referendum question relating to the issuance of bonds for historic preservation projects at the November, 1989, statewide election, would the enactment of 91–S 633 (91–H 5857), if amended to delete the provisions of sections 1–3 and 14 which call for a voter referendum, allow the state of Rhode Island to issue general obligation bonds or would such issuance violate Art. 6, section 16 of the Rhode Island Constitution?"

Before we engage in a discussion of these questions, a review of the matters that occurred prior to your request is in order. In the November 7, 1989 statewide election, P.L.1989, ch. 377, entitled "AN ACT AUTHORIZING THE RHODE ISLAND HISTORICAL COMMISSION TO FUND HISTORIC PRESERVATION PROJECTS AND TO ISSUE NOT MORE THAN $4,500,000 IN BONDS THEREFOR," was presented to the voters of the

---

1. We are obligated under article X, section 3, of the Rhode Island Constitution, to issue an advisory opinion at the request of the House when the question concerns the constitutionality of pending legislation. *In re Advisory Opinion,* 507 A.2d 1316, 1318 (R.I.1986).

state of Rhode Island as referendum question 2 (question 2) and was approved.[2]

In July 1990 the Rhode Island Historical Preservation Commission (commission)[3] requested that the state's budget office include the bonds authorized by the referendum as part of the state's upcoming general-obligation-bond issue. The bonds were never issued by the state, however, because the budget office questioned the propriety of the bond issuance. Specifically the budget office questioned the statutory language providing for the issuance of the bonds by the commission and not for the issuance of bonds by the state on behalf of the commission. To remedy the misnaming of the bond issuer in P.L.1989, ch. 377, two corrective pieces of legislation were proposed in the 1991 session of the General Assembly. They are Nos. 91–S 620 (91–H 5850) and 91–S 633 (91–H 5857).

Senate bill 91–S 620 (91–H 5850) (first bill) provides that the legislative intent of the General Assembly in enacting P.L.1989, ch. 377 was to authorize the State of Rhode Island to issue its general obligation bonds for historical-preservation purposes rather than to authorize the Historical Preservation Commission to issue the bonds. The first question posited to this court asks whether the General Assembly can retroactively clarify the legislative intent of legislation previously presented to and approved by the state's voters by referendum.

Senate bill 91–S 633 (91–H 5857) (second bill) is a reenactment and restructuring of P.L.1989, ch. 377, to conform to the format commonly found in state-obligation-bond acts. It authorizes the General Treasurer of Rhode Island to issue historical preservation bonds "in the name and on behalf of the state." Section 1 provides for submis-

sion of the act to the people at the November 1992 statewide special election, section 2 provides for election procedures, and section 3 requires approval by a majority of the voters to gain approval for the proposition. Section 14 makes sections 1, 2, and 14 effective upon passage of the second bill and makes the remainder of the bill effective upon approval by the voters at the next election. The second question posited to this court asks whether deletion of the referendum provisions in the second bill would allow the state to issue general obligation bonds on behalf of the commission without violating art. VI, sec. 16, of the Rhode Island Constitution.

Each question posited to the court asks whether art. VI, sec. 16 requires submission to the voters for approval by referendum of legislation correcting a mistake in previously enacted legislation approved by referendum in accordance with art. VI, sec. 16. The first bill simply states the legislative intent of the original law, and the second bill, absent the referendum requirement, essentially names the state as issuer of the bonds on behalf of the commission without resubmitting the question to the voters for approval. Because the two questions posed are attempts to cure the mistake without submission to the electorate, they are subject to the same analysis.

Article VI, section 16 (formerly R.I. Const. art. XXXI, sec. 1), requires the "express consent of the people, to incur state debts to an amount exceeding fifty thousand dollars." Article VI, section 16, states in full:

"Borrowing power of general assembly.—The general assembly shall have no

2. Public Laws 1989, ch. 377, was submitted to the voters on November 7, 1989, as Official Statewide Referenda/Ballot Question No. 2.
  "2. Rhode Island Historical Preservation Commission Bonds—Temporary Notes $4,500,000 (Chapter 377—Public Laws 1989)
  Approval of this question will authorize the Rhode Island Historical Preservation Commission to issue its general obligation bonds and temporary notes in an amount not to exceed $4,500,000 to be allocated as follows:
  a. $1,500,000 to provide funds to the Historical Preservation Revolving fund; and

  b. $3,000,000 to provide loans and grants for restoration of historic sites, landscapes, and structures owned by the state and municipal government agencies and by non-profit organizations, and to fund the acquisition of development rights to historic properties."

3. The General Assembly created the Rhode Island Historical Preservation Commission under P.L.1968, ch. 290 (codified at G.L.1956 (1988 Reenactment) chapter 45 of title 42).

powers, without the express consent of the people, to incur state debts to an amount exceeding fifty thousand dollars, except in time of war, or in case of insurrection or invasion; nor shall it in any case, without such consent, pledge the faith of the state for the payment of obligations of others. This section shall not be construed to refer to any money that may be deposited with the state by the government of the United States."

In the past thirty-five years we have had the opportunity to interpret this constitutional requirement in a series of advisory opinions concerning the Rhode Island Industrial Building Authority (industrial authority). In 1958 we were asked whether the approval by referendum of legislation creating the industrial authority would invest that industrial authority with the powers to pledge the credit of the state. *Opinion to the Governor*, 88 R.I. 202, 145 A.2d 87 (1958). In that opinion we first noted that art. XXXI, sec. 1, "disables the general assembly in *any case* from pledging 'the faith of the state for the payment of the obligations of others' unless the express consent of the people is first had and obtained." 88 R.I. at 206, 145 A.2d at 89. We further required that the consent be intelligent, and that "the people must be clearly informed of the nature and extent of the pledge which the general assembly proposes to authorize." *Id.* Under this analysis we determined that the referendum sufficiently informed the electorate of the nature and the extent of the pledge to satisfy the constitutional prohibition of art. XXXI, sec. 1.

Shortly thereafter the Governor of Rhode Island requested this court's opinion on whether the industrial authority could insure payment of a mortgage loan for construction of a luxury motor hotel under P.L.1958, ch. 91, § 7(3). We advised that the industrial authority could not qualify a luxury hotel as an industrial project under the terms of the statute because this interpretation did not "coincide[ ] with what was the common understanding of the people when the act was submitted to them for their approval." *Opinion to the Governor*, 90 R.I. 135, 140, 155 A.2d 602, 604 (1959). In reviewing the legislation under art. XXXI, sec. 1, we stated:

"By that constitutional provision the people have demonstrated in no uncertain terms their jealous regard for the power to pledge the state's credit. Whenever they relax that jealousy and permit the general assembly to exercise such forbidden power it may be lawfully done only within the strict letter of the legislative act referred to the people for their approval." 90 R.I. at 138, 155 A.2d at 603.

In a later opinion to the Governor, this court was asked five questions concerning the right of the industrial authority to insure mortgage loans on new machinery and equipment. At issue was whether the vote of the people in favor of the proposition contained in P.L.1964, ch. 70, gave the industrial authority the "express consent of the people" to pledge the faith and credit of the state to finance the acquisition of machinery and equipment. *Opinion to the Governor*, 100 R.I. 175, 212 A.2d 64 (1965). In advising the Governor that the referendum inadequately informed the electorate, we found that although the proposition did inform the voters that the proposal would permit the industrial authority to increase the aggregate amount of its mortgages by $10 million, the proposal was deficient because it failed to. convey that the state's credit would be pledged for this additional $10 million. *Id.* at 180, 212 A.2d at 67. In explaining the requirements of express consent, we stated:

"The necessary consent must be obtained from the electorate as a whole and, to meet the constitutional requirement, the submission must clearly disclose to the ordinary voter that an approval will empower the Authority to pledge the credit of the state and the extent to which the credit may be pledged." *Id.*

We further explained that the proposition must disclose to the voter the act's legislative intent, and that such disclosure is not adequate merely because it reveals an intention "to pledge the credit of the state when read by persons versed in the arts of commerce and finance." *Id.* at 179, 212 A.2d at 67.

In a later case we held that the proposition submitted to the electorate for approval does not have to include a verbatim copy of the substantive provisions in the statute. *Chartier Real Estate Co. v. Chafee*, 101 R.I. 544, 552, 225 A.2d 766, 771 (1967). In explaining that a verbatim inclusion of the statute's words is unnecessary we stated that "it is only necessary that the purpose and extent of the pledge of state credit be made clear to the ordinary voter so that he may give an intelligent consent to the proposition." *Id.* We do not interpret this dicta to relax the strict requirement of clear disclosure to the ordinary voter of the extent to which the credit may be pledged. Accordingly question 2 must be strictly interpreted to determine the authority granted by the people, and any subsequent legislation is constitutional only if it falls within that authority.

Relying upon a strict interpretation of question 2, we find that the proposition adequately informed voters so as to gain their express consent for issuance of bonds by the commission only. The language of the referendum did not adequately inform the voters that the state will issue bonds on behalf of the commission; consequently, the electorate did not give its express consent to issuance of general obligation bonds by the state on behalf of the commission. Because the voters never acceded their informed consent for the state to issue the bonds, any subsequent legislation allowing the State of Rhode Island to issue bonds on behalf of the commission must be submitted to the people.

In reaching this opinion, we reject the argument that the state can issue the bonds on behalf of the commission because the commission, by virtue of its enabling legislation, is a department of the state executive office. We are not prepared to hold the electorate to understand the statutory distinction between a separate legal entity capable of issuing its own bonds, like the Rhode Island Turnpike and Bridge Authority, G.L.1956 (1989 Reenactment) chapter 12 of title 24, and a department within the state executive department like the Rhode Island Historical Preservation Commission, G.L.1956 (1988 Reenactment) § 42–45–2. The complexities of public finance and the potential for obfuscation by the government are among the primary reasons behind art. VI, sec. 16; accordingly, in drafting referenda, the state must explicitly identify the issuer of the bonds and the purposes for which the bonds will be issued.

It is our opinion, therefore, that neither the first bill nor the second bill, absent the referendum provisions, allows the state to issue general obligation bonds under the authority of P.L.1989, ch. 377. In answering negatively to both questions posited, we are aware of the political sensitivity of the legislation at issue. We recognize the importance of funding historical preservation, and that lack of funding may result in irreparable deterioration of historic sites. Nevertheless, we are of the opinion that political needs cannot surmount a constitutional requirement. Having failed to gain the people's express consent for the state to issue general obligation bonds on behalf of the commission, the General Assembly cannot subsequently legislate the state's issuance of bonds without first resubmitting the proposal to the electorate for its informed consent.

In making negative responses to the questions posed by the House of Representatives, the members of this court express their appreciation for the assistance given by briefs submitted by counsel for the Governor, the House of Representatives, and the Rhode Island Bar Association.

Respectfully submitted,
THOMAS F. FAY
Chief Justice
THOMAS F. KELLEHER
JOSEPH R. WEISBERGER
FLORENCE K. MURRAY
DONALD F. SHEA
Associate Justices