**Cheryl A. SOLA**

v.

**Chelsea LEIGHTON, et al.**

**No. 2011–186–Appeal.**

Supreme Court of Rhode Island.

June 13, 2012.

Joseph R. Palumbo, Jr., Esq., Middletown, for Plaintiff.

Marc DeSisto, Esq., Providence, for Defendants.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on May 9, 2012, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The plaintiff, Cheryl A. Sola (Sola or plaintiff), appeals from a Superior Court decision dismissing her defamation claim as time-barred and granting summary judgment in favor of the defendants, the City of Newport (city) and Detective Michael Caruolo (Det. Caruolo), individually and in his capacity as a member of the Newport Police Department, (collectively, defendants).[1] On appeal, the plaintiff argues: (1) that the statute of limitations on her claim should have been tolled because her original complaint, filed before the statutory period expired, included John Doe defendants; (2) that her claim accrued on the date when she was fired as a result of Det. Caruolo's allegedly defamatory statements, not on the date when those statements were published; and (3) that the statute of

---

1. We note that an additional defendant, Chelsea Leighton (Leighton), was the subject of plaintiff's first amended complaint, filed on August 9, 2007. The complaint alleged that Leighton had defamed plaintiff by falsely and maliciously stating that plaintiff had disclosed confidential healthcare information. Leighton defaulted and did not appeal from the default judgment.

limitations should have been tolled because Det. Caruolo fraudulently concealed the plaintiff's cause of action. Having carefully reviewed the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown; thus, the appeal may be decided at this time. We affirm the judgment of the Superior Court.

## Facts and Travel

On May 30, 2006, plaintiff was fired from her position as a receptionist in the admitting department at Newport Hospital. On June 16, 2006, plaintiff filed a civil complaint in Superior Court against "John Does 1–10 and Jane Does 1–10," alleging that "[i]n or about the period of the first four months of 2006 * * * an individual or individuals defamed the plaintiff by falsely and maliciously stating that plaintiff publicly disclosed confidential health care information about certain patients at Newport Hospital." The plaintiff further alleged that she was fired as a result of the defamatory statements and consequently suffered humiliation, mental anguish, and economic damages.

In her quest to discover the source or sources responsible for the claimed defamatory statements, plaintiff obtained a copy of an April 13, 2006 e-mail sent to the Newport Hospital Director of Health Information and Registration, Pamela Improta (Improta), from Newport Police Captain Wayne Morrison (Capt. Morrison). In the e-mail, Capt. Morrison notified Improta that in "February of 2006[he] was informed by an employee who works * * * in the Newport Police Detective Division,

Detective Michael Caruolo," about irregularities involving a Newport Hospital employee, Cheryl Sola. The e-mail described how the misdeeds came to light after Det. Caruolo interviewed a confidential informant who had witnessed plaintiff divulging "information concerning Newport police officers * * * [which] had been culled from their medical files in Newport Hospital." According to the e-mail, Det. Caruolo's confidential informant specifically named several members of the police department whose personal information—including their home addresses and information about their spouses and children—had been disclosed by Sola. According to the informant, plaintiff's conduct included driving by the homes of several members of the police department and surveilling their activities. The e-mail went on to describe how Sola's behavior reportedly was motivated by a desire to boast to her friends about the information to which she had access and to monitor men in the police department with whom previously she had been romantically involved. Captain Morrison concluded his e-mail to Improta by expressing his hope that the information he provided would aid Improta's investigation into the informant's allegations.[2]

The information imparted by Capt. Morrison apparently was derived from a police report written by Det. Caruolo, dated February 23, 2006, in which Det. Caruolo reported that he received information in December 2005 "from a reliable source" that Sola "was accessing and [disseminating] personal information as well as medical information of members of [the Newport] police department." According to the re-

---

**2.** On November 3, 2006, Improta filed an affidavit describing her investigation into the accusations against plaintiff. Improta stated that she reviewed Information Services logs that documented when Sola had accessed the Newport Hospital records of several police officers. Improta then interviewed Sola, who

reportedly did not deny accessing the records and could offer no explanation for having done so. Improta stated that plaintiff was fired at the conclusion of her investigation, following Newport Hospital's determination that plaintiff had violated hospital policy and HIPAA regulations.

port, Det. Caruolo asked the informant to gather more specific information and conducted a follow-up interview with the informant on February 23, 2006. That same day, he reported what he had learned to Capt. Morrison.

On October 19, 2006, having obtained a copy of Capt. Morrison's April 13 e-mail mentioning Det. Caruolo's involvement in the case, plaintiff filed a motion to depose Det. Caruolo. The motion was granted and on June 26, 2007, Det. Caruolo was questioned about his report. During the course of the deposition, it was revealed that Chelsea Leighton (Leighton), a friend of plaintiff's, was Det. Caruolo's "reliable source" who informed him of plaintiff's improper activities. The plaintiff subsequently moved to amend her complaint to name Leighton as a defendant. Leighton was served with plaintiff's amended complaint but failed to respond; a default judgment entered against her on October 2, 2007.

It was not until May 11, 2009, that plaintiff sought leave to file a second amended complaint, adding Det. Caruolo and the city as defendants. The plaintiff's motion was granted and her second amended complaint was filed on May 20, 2009—more than three years from the date when Det. Caruolo published his allegedly defamatory statements. The complaint alleged that Det. Caruolo, acting individually and in his official capacity, had "knowingly and maliciously published false statements that a so-called confidential informant employed at Newport Hospital informed him that Plaintiff accessed and/or released confidential health care information concerning Newport police officers while she was employed at Newport Hospital."

On June 8, 2009, defendants filed a motion to dismiss the second amended complaint on statute of limitations grounds, arguing that plaintiff's claim was barred because more than three years had passed between the date when Det. Caruolo's police report was filed, February 23, 2006, and the date when plaintiff filed her second amended complaint, May 20, 2009. The defendants requested that the trial justice treat their motion to dismiss as a motion for summary judgment. In opposition to defendants' motion, plaintiff asserted the same three arguments that she now raises on appeal. The defendants asserted that plaintiff's "John Doe" complaint did not toll the statute of limitations because, at the time she filed her initial complaint, plaintiff knew Det. Caruolo's identity and that he filed the police report that prompted Capt. Morrison's e-mail. Furthermore, defendants argued that plaintiff's cause of action accrued on February 23, 2006, when Det. Caruolo's allegedly defamatory statements were published, not on May 30, 2006, when plaintiff was fired. Finally, defendants averred that there was no evidence that Det. Caruolo had sought to fraudulently conceal the statements that he had made in his report.

On October 21, 2009, the trial justice—who agreed to treat defendants' motion to dismiss as a motion for summary judgment—issued a decision in defendants' favor.[3] The trial justice determined that G.L.1956 § 9-5-20, which permits a plaintiff who does not know a defendant's name

---

**3.** The record discloses that the parties had referred to documents and deposition testimony in support of their arguments—instead of relying solely on the pleadings—and, consequently, it was more appropriate to treat defendants' motion to dismiss as a motion for summary judgment. *See Franklin Grove Corp.* *v. Drexel*, 936 A.2d 1272, 1275 (R.I.2007) ("A motion to dismiss for failure to state a claim is 'treated as one for summary judgment when matters outside the pleading are presented to and not excluded by the court.' " (quoting *Steinberg v. State*, 427 A.2d 338, 339 n. 2 (R.I.1981))).

to use a fictitious name for purposes of filing process, was unavailable to plaintiff because she knew both Det. Caruolo's identity and that he had written the police report.[4] The trial justice also determined, based on this Court's pronouncement in *Mikaelian v. Drug Abuse Unit,* 501 A.2d 721, 725 (R.I.1985), that plaintiff's claim accrued on the date when Det. Caruolo's report was published, which was more than three years before plaintiff filed her second amended complaint. *See id.* (holding that the right of action in a defamation case accrues on the date when the allegedly defamatory statements are published). Finally, the trial justice held that "[t]here is absolutely no evidence that Detective Caruolo acted in any way to conceal the existence of a cause of action against him;" and, consequently, the trial justice refused to toll the statute of limitations pursuant to G.L.1956 § 9–1–20.[5] The trial justice accordingly ruled that plaintiff's claim was barred by the statute of limitations, and on January 21, 2010, entered final judgment in defendants' favor. The plaintiff timely appealed.

## Standard of Review

■ "This Court reviews *de novo* a trial justice's decision granting summary judg-

ment." *Lynch v. Spirit Rent–A–Car, Inc.,* 965 A.2d 417, 424 (R.I.2009). Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law." *Plunkett v. State,* 869 A.2d 1185, 1187 (R.I.2005) (quoting *Wright v. Zielinski,* 824 A.2d 494, 497 (R.I.2003)). "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." *National Refrigeration, Inc. v. Standen Contracting Co.,* 942 A.2d 968, 971 (R.I.2008) (quoting *Carlson v. Town of Smithfield,* 723 A.2d 1129, 1131 (R.I.1999)).

## Analysis

The plaintiff does not dispute that a three-year statute of limitations applies to her defamation claim or that her second amended complaint was filed more than three years after Det. Caruolo's allegedly defamatory statements were published.[6] The plaintiff, however, argues that her

---

4. General Laws 1956 § 9–5–20 provides:

"Whenever the name of any defendant or respondent is not known to the plaintiff, the summons and other process may issue against him or her by a fictitious name, or by such description as the plaintiff or complainant may select; and if duly served, it shall not be abated for that cause, but may be amended with or without terms as the court may order."

5. General Laws 1956 § 9–1–20 provides:

"If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to accrue against the person so liable at the time when the

person entitled to sue thereon shall first discover its existence."

6. Section 9–1–14(b) sets forth the statute of limitations for plaintiff's claim: "Actions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after * * *." *See Lyons v. Town of Scituate,* 554 A.2d 1034, 1036 (R.I.1989) (holding that "[i]njuries to the person" also encompasses actions for malicious use of process and written defamation or libel (citing *Mikaelian v. Drug Abuse Unit,* 501 A.2d 721, 724 (R.I. 1985))). We note that § 9–1–14(a) sets forth that an action for words spoken—slander—must be commenced within one year after the words were spoken.

claim nonetheless should be allowed to proceed and raises three arguments in support of her contentions. We address each of these arguments in turn.

■ We begin by analyzing plaintiff's first assertion, that the statute of limitations on her claim should have been tolled pursuant to § 9–5–20 because she filed a John Doe complaint within the statutory period. A plaintiff may avail himself or herself of the provisions of § 9–5–20 only when "the name of any defendant or respondent is not known to the plaintiff." *Id; see Hall v. Insurance Co. of North America*, 666 A.2d 805, 806 (R.I.1995) (holding that "the filing of a John Doe complaint tolls the statute of limitations in order to provide a plaintiff with an opportunity to discover an unknown defendant" (citing *Souza v. Erie Strayer Co.*, 557 A.2d 1226, 1227 (R.I.1989))); *see also Ensey v. Culhane*, 727 A.2d 687, 690 (R.I.1999) (noting that naming John Doe defendants "will not toll the statute of limitations unless they are served with process within a reasonable time after they are identified").

We are of the opinion that the provisions of § 9–5–20 are unavailable to plaintiff. On October 19, 2006, plaintiff filed a memorandum in support of her motion to depose several individuals, including Det. Caruolo, alleging that Det. Caruolo knew the identity of the individual who had first accused plaintiff of sharing confidential patient information and that Det. Caruolo described that person as a "reliable source." Attached to plaintiff's memorandum was Capt. Morrison's e-mail to Im-prota, wherein Capt. Morrison revealed that Det. Caruolo was the individual who had alerted him about the informant's accusations against Sola. The record thus reveals that as early as October 19, 2006, plaintiff knew the identity of Det. Caruolo and was aware that he was the individual responsible for reporting the accusations against her to Capt. Morrison. Indeed, in her memorandum in opposition to defendant's motion to dismiss, plaintiff admitted that at the time when she filed her original complaint on June 16, 2006, she was aware that Det. Caruolo had received and forwarded information "that Plaintiff had accessed confidential health care information about Newport police officers." Accordingly, because plaintiff knew Det. Caruolo's identity, she cannot take refuge in § 9–5–20, which is intended to protect parties who do not know the identity of a defendant. A John Doe complaint does not save this case. *See Ensey*, 727 A.2d at 690.

■ The plaintiff's second argument is that her cause of action accrued when she was fired, on May 30, 2006, not when Det. Caruolo's allegedly defamatory statements were published, on February 23, 2006. The traditional rule in defamation cases, and the rule that obtains in this jurisdiction, is that the statute of limitations for a defamation claim begins to run on the date when the statements at issue were spoken or published. *Austin v. Carden*, 818 A.2d 662, 664 (R.I.2003); *Mikaelian*, 501 A.2d at 725.[7] Although plaintiff may have been fired as a result of Det. Caruolo's allegedly

---

7. We decline plaintiff's invitation to graft onto defamation claims our rule in product liability cases that the statute of limitations commences to run at the time of injury. *See Plouffe v. Goodyear Tire & Rubber Co.*, 118 R.I. 288, 293, 373 A.2d 492, 495 (1977) (holding that in *product liability cases,* a cause of action accrues at the time of injury). We note that our decision in *Mikaelian*, 501 A.2d at 725, reserved for future determination the question of whether this Court might adopt the discovery rule for libel and slander claims. As plaintiff argued that the statute of limitations should commence running at the time of injury and not at the time of discovery, this case does not present that issue for our review, and we again leave that question for another day.

defamatory statements, her claim sounded in tort for defamation, not for improper termination of employment. The relevant date, therefore, is the date when the statements at issue were published, not the date on which plaintiff was fired. Because Det. Caruolo filed his police report on February 23, 2006, we are of the opinion that it was three years from that date—and several months before plaintiff filed her second amended complaint, which finally named defendants—when the statute of limitations on plaintiff's claim expired.

■ We now address plaintiff's third and final contention—that the statute of limitations should have been tolled because Det. Caruolo fraudulently concealed the cause of action. The plaintiff contends that Det. Caruolo invented a "bogus" story claiming that "a Newport Hospital coworker" of Sola's was his informant. According to plaintiff, it was only when Det. Caruolo was deposed on June 26, 2007, that she discovered that his informant actually was Leighton—who apparently was friendly with plaintiff.[8] Accordingly, plaintiff argues that her cause of action did not accrue until June 26, 2007—the date of Det. Caruolo's deposition—because, before this disclosure, she had been misled by Det. Caruolo's false statement that his informant was an employee at Newport Hospital.

■ We are of the opinion that plaintiff's argument is without merit. In order to prove fraudulent concealment, a plaintiff must show: "(1) that the defendant made an actual misrepresentation of fact; and (2) that, in making such misrepresentation, the defendant fraudulently concealed the existence of [the] plaintiff's causes of action." *Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 182 (R.I.2008) (citing *Kelly v. Marcantonio*, 187 F.3d 192, 200 (1st Cir.1999)). In the first instance, the record reveals that Det. Caruolo's report never identified his informant as a Newport Hospital employee. To the contrary, the report explicitly stated that Det. Caruolo's source "indicated she is a good friend of Sola." Even if plaintiff labored under the mistaken belief that Det. Caruolo's informant was a coworker, plaintiff has failed to produce record proof that Det. Caruolo was responsible for fraudulently creating that impression.[9]

Furthermore, regardless of the identity of Det. Caruolo's source, the plaintiff was aware that Det. Caruolo had published a report on February 23, 2006 that contained information that he had learned from an informant. The plaintiff knew of that publication, whether or not she knew the source's identity. It was the plaintiff's knowledge of Det. Caruolo's report that gave rise to a potential cause of action. Accordingly, we are of the opinion that the plaintiff's final argument is without merit and that the trial justice correctly granted summary judgment in the defendants' favor.

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court. The pa-

8. In his deposition, Det. Caruolo stated that Leighton reported that "she and [Sola] had been very good friends for a number of years" and that she had been present on occasions when Sola shared confidential patient information with her friends. Although the record before us is not definitive, it suggests that Leighton worked in some capacity in the private healthcare sector, but apparently was not employed at Newport Hospital.

9. Captain Morrison's e-mail to Improta refers to the confidential informant as an employee at Newport Hospital and states that Capt. Morrison received his information from Det. Caruolo. We are unpersuaded that Capt. Morrison's apparently erroneous statement about Leighton's employment is of any relevance because there is no indication that the misstatement was intentional or that Det. Caruolo fraudulently caused it.

pers in this case may be remanded to the Superior Court.