SHAWMUT BANK, N.A. *v.* VALLEY FARMS ET AL.
(14411)

PETERS, C. J., CALLAHAN, COVELLO, BORDEN and BERDON, Js.

Argued February 11—decision released June 9, 1992

*Richard P. Weinstein,* with whom was *Jennifer Jaff,* for the appellants (defendants).

*Robert M. Dombroff,* with whom, on the brief, was *Stephen W. Aronson,* for the appellee (plaintiff).

BORDEN, J. The principal issue in this appeal is the constitutionality, under the due process clause of the fourteenth amendment to the United States constitution, of our statutory scheme regarding the action of

replevin codified in General Statutes § 52-515 et seq. The defendant partnerships, Valley Farms, Maple Shade Farms, Starr Farms and REM Motor Rental, appeal[1] from the judgment of the trial court granting the application of the plaintiff, Shawmut Bank, N.A.,[2] for a prejudgment remedy of replevin of certain property of the defendants. The defendants claim that: (1) the statutory scheme authorizing replevin[3] violates the

[1] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023.

[2] Shawmut Bank, N.A., is the successor in interest to Shawmut Bank of Boston, N.A., the original party to the transactions with the defendants. We refer herein to Shawmut Bank, N.A., as the plaintiff.

[3] Although the defendants purport to challenge the entire "statutory scheme" regarding replevin; General Statutes §§ 52-515 through 52-531; their claims of unconstitutionality focus on General Statutes §§ 52-516 and 52-518.

General Statutes § 52-516 provides: "COMMENCEMENT OF ACTION OF REPLEVIN. PREJUDGMENT REMEDY. (a) An action of replevin shall be commenced by a writ of summons or attachment, describing the parties, the court to which it is returnable and the time and place of appearance. The writ shall be signed as in other civil actions and may run into any judicial district.

"(b) An action of replevin, to the extent that it includes a prejudgment remedy as defined in section 52-278a, shall not be allowed unless the provisions of sections 52-278a to 52-278f, inclusive, are complied with."

General Statutes § 52-518 provides: "REPLEVIN WRIT; AFFIDAVIT AS TO VALUE OF GOODS AND RECOGNIZANCE REQUIRED. A writ of replevin shall not be issued: (1) Until the plaintiff, or some other credible person, subscribes an affidavit annexed to the writ stating the true and just value of the goods which it is desired to replevy, and that the affiant believes that the plaintiff is entitled to the immediate possession of the goods, and (2) until some person, known to the authority signing the writ to be of sufficient responsibility, has entered into a recognizance before him, with at least one sufficient surety, in a sum at least double the sworn value of the property, conditioned (A) that the plaintiff shall prosecute his action to effect, (B) for the payment of any judgment that may be recovered by the defendant in the action, and (C) for the return of the property to the defendant, and payment to the defendant of all damages sustained by the replevy of the property if the plaintiff fails to establish his right to its possession. The recognizance shall be signed by the obligors in the presence of at least one witness other than the authority taking the recognizance. A record of the recognizance shall be entered at the foot of the writ before the writ is issued, and copies of the process left in service shall contain the affidavit and the recognizance."

federal due process clause; and (2) the property sought to be replevied is exempt from execution and, therefore, from replevin by way of a prejudgment remedy. We affirm the judgment of the trial court.

For purposes of this appeal, the following facts are undisputed. The defendants operate farms in Connecticut. Pursuant to a series of documents consisting of certain letter agreements, demand promissory notes, security agreements and guaranties executed by the defendants in 1985, 1986 and 1991, the plaintiff loaned the defendants $1,200,000, and the defendants granted the plaintiff a security interest in all the defendants' assets, including equipment, inventory, livestock and feed. The second of the letter agreements provided that, upon default, the defendants would voluntarily surrender possession of the collateral to the plaintiff. Despite the defendants' default on repayment of the loan, they refused to comply with the plaintiff's request for possession of the collateral. The plaintiff thereupon brought this action.

The plaintiff filed an application for a prejudgment remedy alleging that there was probable cause to believe that a judgment would be rendered against the defendants, and sought an order of the court "directing that the following prejudgment remedy be issued to secure the sum of One Million Five Hundred Thousand ($1,500,000.00) Dollars, to wit: To replevy the goods and chattels described on Exhibit AA attached hereto." Exhibit AA listed, in general terms, all the livestock, feed and equipment owned by the four defendants, and also listed, by model year and serial number, certain equipment owned by the defendants Valley Farms and REM Motor Rental. Attached to the application was an eight page affidavit of Kevin C. Murphy, a vice president of the plaintiff, describing the transactions between the plaintiff and the defendants. Attached to the affidavit were copies of the various let-

ter agreements, promissory notes, security agreements, and guaranties of the defendants. Also attached to the application was an unsigned writ, summons and complaint alleging, inter alia, that the defendants had wrongfully refused to turn the collateral over to the plaintiff, and requesting, in the prayer for relief, immediate possession of the collateral, monetary damages if the collateral could not be replevied to the plaintiff, damages for wrongful detention of the collateral, attorneys' fees, and other equitable relief.

Pursuant to an order of the trial court, the court conducted an evidentiary hearing on July 29, 1991. After the hearing, the trial court found probable cause that judgment would be rendered in the matter in favor of the plaintiff, and also found the total indebtedness of the defendants to the plaintiff to be $1,080,000. The court did not, however, issue an order of replevin. Instead, it continued the case for two weeks in order for the parties to file briefs on the defendants' claim that the property was exempt from a prejudgment remedy. Also, in response to an argument of the defendants, the court ruled that the plaintiff's application was defective because it lacked an affidavit of the actual value of the property to be replevied and a proper bond. See General Statutes § 52-518 as set out in footnote 3, supra. The court instructed the plaintiff to amend its application in order to remedy these defects.

The parties returned to court on August 12, 1991. Prior to that date, the plaintiff had filed an affidavit evaluating the collateral at $3,150,000, and a bond in the amount of $6,300,000, twice the value of the collateral. After oral arguments, the trial court granted the plaintiff's application. It ordered that the plaintiff could replevy the collateral to the value of $3,150,000.[4] This appeal followed.

---

[4] The order was stayed pending this appeal, pursuant to the parties' agreement.

## I

We first consider the defendants' claim, rejected by the trial court, that the property sought to be replevied was exempt from prejudgment remedy attachment because it constituted "[t]ools, books, instruments and farm animals which are necessary to the exemptioner in the course of his or her occupation or profession."[5] General Statutes § 52-352b (b).[6] We agree with the trial

[5] We address this claim first because of the fundamental principle of appellate jurisprudence that a case should be disposed of on nonconstitutional grounds if possible. See *State* v. *Daniels,* 209 Conn. 225, 229 n.1, 550 A.2d 885 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103 L. Ed. 2d 817 (1989).

[6] General Statutes § 52-352b provides: "EXEMPT PROPERTY. The following property of any natural person shall be exempt:

"(a) Necessary apparel, bedding, foodstuffs, household furniture and appliances;

"(b) Tools, books, instruments and farm animals which are necessary to the exemptioner in the course of his or her occupation or profession;

"(c) Burial plot for the exemptioner and his or her immediate family;

"(d) Public assistance payments and any wages earned by a public assistance recipient under an incentive earnings or similar program;

"(e) Health and disability insurance payments;

"(f) Health aids necessary to enable the exemptioner to work or to sustain health;

"(g) Workers' compensation, social security, veterans and unemployment benefits;

"(h) Court approved payments for child support;

"(i) Arms and military equipment, uniforms or musical instruments owned by any member of the militia or armed forces of the United States;

"(j) One motor vehicle to the value of one thousand five hundred dollars, provided value shall be determined as the fair market value of the motor vehicle less the amount of all liens and security interests which encumber it;

"(k) Wedding and engagement rings;

"(l) Residential utility deposits for one residence, and one residential security deposit;

"(m) Payments received by the exemptioner under a profit-sharing, pension, stock bonus, annuity or similar plan which is established for the primary purpose of providing benefits upon retirement by reason of age, health, or length of service and which is either (1) qualified under Section 401, 403, 404 or 408 of the Internal Revenue Code, or any successor thereto, or (2) established by federal or state statute, but only to the extent that wages are exempt from execution under section 52-361a;

court and the plaintiff that the exemptions from post-judgment remedies, and therefore from prejudgment attachment, afforded by General Statutes § 52-352b, apply only to "property of any natural person" under that statute and, therefore, do not apply to property of partnerships, like the defendants.[7]

Section 52-352b, which is part of chapter 906, entitled "Postjudgment Procedures," exempts from postjudgment procedures certain "property of any natural person." Although the term "natural person" is not defined in chapter 906, it clearly means a human being, as opposed to an artificial or juristic entity. First, the types of property that are exempt under § 52-352b, other than the "[t]ools, books, instruments and farm animals" referred to in subsection (b), are the types normally associated with individuals, not legal entities.[8] Furthermore, the legislature has consistently used the term "natural person" in order to distinguish it from a partnership. See, e.g., General Statutes § 1-18a (c) (" 'Person' means natural person, partnership, association or society."); General Statutes § 33-374d (10) (" 'Person' means a natural person, company, partnership, foreign or domestic corporation, trust, unincor-

---

"(n) Alimony and support, other than child support, but only to the extent that wages are exempt from execution under section 52-361a;

"(o) An award under a crime reparations act;

"(p) All benefits allowed by any association of persons in this state towards the support of any of its members incapacitated by sickness or infirmity from attending to his usual business; and

"(q) All moneys due the exemptioner from any insurance company on any insurance policy issued on exempt property, to the same extent that the property was exempt."

[7] This conclusion renders it unnecessary to consider the plaintiff's alternate argument that the defendants were estopped from claiming the statutory exemption by granting the plaintiff a consensual lien on the collateral.

[8] Examples of types of property that are exempt under the statute are workers' compensation and social security benefits, health and disability insurance payments, burial plots and wedding rings. See footnote 6, supra.

porated organization, government or any other entity or political subdivision, agency or instrumentality of a government. . . ."); General Statutes § 34-9 (12) (" 'Person' means a natural person, partnership, limited partnership, foreign limited partnership, trust, estate, association or corporation."). Finally, except where a word or phrase has a technical meaning or has acquired "a peculiar and appropriate meaning in the law," a statutory word or phrase "shall be construed according to the commonly approved usage of the language." General Statutes § 1-1 (a). Consistent with that rule of construction, "natural person" means "a human being as distinguished in law from an artificial or juristic person." Webster's Third New International Dictionary.

We are unpersuaded by the defendants' argument that excluding partnerships from the exemption of § 52-352b would "render the exemption meaningless as applied to the few remaining small family farms" because "every family that owns and operates a farm collectively could be deemed to be a partnership . . . ." Unlike these defendants, who have chosen to operate their farms in the partnership form, others remain free to own their farm assets in individual or joint ownership forms and thereby retain the statutory exemption available to natural persons. See, e.g., *Gangl v. Gangl*, 281 N.W.2d 574 (N.D. 1979) (family farm not a partnership). These defendants presumably saw some legal advantage to operating the farms as partnerships. Having done so, they must accept any legal disadvantage that arises from the limitation of § 52-352b to property owned by a natural person.

## II

We turn, therefore, to the defendants' principal claim, namely, that the statutory scheme for replevin of goods *on its face* fails to satisfy due process of law.

The defendants identify three "procedural inadequacies in the statutory scheme" that, they argue, render the statutory scheme, and thus this replevin order, invalid: (1) an ex parte replevin is permitted upon a showing only of probable cause rather than of exigent circumstances; (2) General Statutes § 52-521 provides for a challenge to the amount and form of the bond only after the seizure has occurred; and (3) the statutes do not require that the property to be replevied be identified. Recognizing that, as the applicable statutes were interpreted and applied by the trial court in this case, each of these requirements was either met or was inapplicable,[9] the defendants argue that the statutes must be viewed facially, rather than as applied, because they "are unconstitutional in every application," and that, therefore, "the fact that the court was willing to give [the defendants] more process than the statutes authorize does not save the statutes from constitutional challenge." We disagree.

First, we reject the contention that we are required to gauge the constitutionality of our replevin statutes on their face, without regard to the particular facts of this case or the interpretation placed on the statutory language by the trial court. "The United States Supreme Court has noted that to mount a facial challenge to a statute, one must establish that no set of circumstances exists under which the Act would be valid. The fact that the [Act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an

_____

[9] This was not an ex parte replevin proceeding. The trial court did not issue an order of replevin until after notice and a full evidentiary hearing. Furthermore, the defendants had an adequate opportunity to challenge the amount of the bond at the August 12, 1991 hearing, before the order of replevin was issued, but failed to do so. Finally, the property to be replevied was fully identified in the documents presented to the court in the plaintiff's application.

'overbreadth' doctrine outside the limited context of the First Amendment. *Schall* v. *Martin*, [467 U.S. 253, 269 n.18, 104 S. Ct. 2403, 81 L. Ed. 2d 207 (1984)]. *United States* v. *Salerno*, 481 U.S. 739, 745, 753–55, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)." (Internal quotation marks omitted.) *State* v. *Ayala*, 222 Conn. 331, 344 n.12, 610 A.2d 1162 (1992). This well established principle is consistent with the equally well established principles that " '[d]ue process is flexible and calls for such procedural protections as the particular situation demands' "; *Tedesco* v. *Stamford*, 222 Conn. 233, 242–43, 610 A.2d 574 (1992); and that we strive to read statutes so as to preserve, rather than to undermine, their constitutionality. *State* v. *Kane*, 218 Conn. 151, 156, 588 A.2d 179 (1991). We therefore view the question of the constitutionality of the statutes at issue as applied under the facts of this case. See *State* v. *Ayala*, supra. We conclude that the replevin statutes, as applied by the trial court to this case, comport with the requirements of due process of law.

In support of their claim, the defendants offer no more than the bare assertion that the statutes at issue are unconstitutional under any conceivable set of circumstances. Indeed, the facts of this case belie that assertion, since the trial court, relying on its interpretation of the statutes, provided the defendants with nearly all the process that they claimed to be due, namely, the opportunity to challenge the amount and form of the bond before the seizure, and proper identification of the property to be replevied.[10]

The trial court's interpretation, moreover, was firmly rooted in the statutory language and was not, as the defendants' argument suggests, a strained attempt to

---

[10] We discuss, infra, the only other statutory deficiency identified by the defendants, namely, a provision that replevin may be ordered upon a finding of exigency rather than of probable cause.

salvage an obviously unsalvageable statutory scheme. General Statutes § 52-516 (b) provides that "[a]n action of replevin, to the extent that it includes a prejudgment remedy as defined in section 52-278a, shall not be allowed unless the provisions of sections 52-278a to 52-278f, inclusive, are complied with."[11] General Statutes § 52-278a (d) specifically defines "[p]rejudgment remedy" to include the action of replevin.[12]

General Statutes §§ 52-278a through 52-278h were "enacted in response to the constitutional instructions of *Fuentes* v. *Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32

---

[11] We recognize that, under some circumstances, it may be something of a misnomer to call a replevin action a "prejudgment remedy," since the principal purpose of such an action is often, as in this case, to obtain a judgment authorizing possession of and the right to dispose of the property sought to be replevied in order to satisfy a preexisting debt; cf. *General Motors Acceptance Corporation* v. *Powers,* 137 Conn. 145, 75 A.2d 391 (1950); and any other aspects of the judgment would be merely incidental to that purpose. It is clear, nonetheless, that the legislature has included replevin in the panoply of prejudgment remedies; General Statutes § 52-278a (a); and that the strictures of the due process clause apply to such an action. See *Mitchell* v. *W. T. Grant Co.,* 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974).

[12] General Statutes § 52-278a provides: "DEFINITIONS. The following terms, as used in sections 52-278a to 52-278g, inclusive, shall have the following meanings, unless a different meaning is clearly indicated from the context:

"(a) 'Commercial transaction' means a transaction which is not a consumer transaction.

"(b) 'Consumer transaction' means a transaction in which a natural person obligates himself to pay for goods sold or leased, services rendered or moneys loaned for personal, family or household purposes.

"(c) 'Person' means and includes individuals, partnerships, associations and corporations.

"(d) 'Prejudgment remedy' means any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment but shall not include a temporary restraining order.

"(e) 'Property' means any present or future interest in real or personal property, goods, chattels or choses in action, whether such is vested or contingent."

L. Ed. 2d 556 (1972), and *Sniadach* v. *Family Finance Corporation*, 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969)." (Internal quotation marks omitted.) *Ford Motor Credit Co.* v. *B. W. Beardsley, Inc.*, 208 Conn. 13, 16, 542 A.2d 1159 (1988). Thus, in order to obtain an order of replevin, the plaintiff was required to satisfy not only the requirements of the replevin statutes; General Statutes § 52-515 et seq.; but the requirements of due process as expressed in §§ 52-278a through 52-278h.

With regard to the identification of the property to be replevied, implicit in §§ 52-278a through 52-278h is the requirement that property that is the subject of a prejudgment remedy be identified. The bench and bar of this state have always understood that identification to be a statutory requirement. Indeed, paragraph 2.a. of the statutory form for an application for a prejudgment remedy of attachment reflects that requirement.[13]

With regard to the opportunity of the defendants to challenge the amount and form of the bond before the seizure, General Statutes § 52-521 (b) provides in pertinent part that "[i]f the defendant is not satisfied with the recognizance, he may, at any time before the return day of the writ, cite the plaintiff or his attorney, or the officer serving the writ, if the property still remains in his custody, to appear at once before a judge of the superior court where the replevin was effected, to respond to a motion for a new bond."[14] It is true, as

---

[13] General Statutes § 52-278c sets out, inter alia, the form for an application for a prejudgment remedy. Paragraph 2.a. of that form provides: "2. That there is probable cause that a judgment will be rendered in the matter in favor of the applicant and to secure the judgment the applicant seeks an order from this court directing that the following prejudgment remedy be issued to secure the sum of $ . . . . :

"a. To attach sufficient property of the defendant to secure such sum."

[14] General Statutes § 52-521 provides: "REPLEVIN; SERVICE; NEW BOND; VOIDING OF PROCESS. (a) The officer who replevies property shall leave a true and attested copy of the process with the defendant, or at his usual

the defendants argue, that § 52-521, as drafted, ordinarily contemplates a challenge to the bond after the seizure. That does not mean, however, that it is not subject to a construction, in order to save its constitutionality, that would require an opportunity by the defendant to challenge the amount and form of the bond prior to the seizure of the property.

Section 52-521 (b) requires, as a matter of timing, only that the plaintiff challenge the bond "at any time before the return day of the writ." That language does not preclude a construction that, for constitutional reasons, advances the time for such a challenge. Since, as the defendants point out, the effect of a replevin of their cattle on their property interest therein was substantial, because it would work "a complete and physical taking of the cattle," and since "[i]n order to comply

place of abode, within three days after the replevy, and shall retain the property replevied in his custody for twenty-four hours after leaving the copy, unless the defendant endorses on the writ that he is satisfied with the amount and sufficiency of the recognizance taken on issuing the writ.

"(b) If the defendant is not satisfied with the recognizance, he may, at any time before the return day of the writ, cite the plaintiff or his attorney, or the officer serving the writ, if the property still remains in his custody, to appear at once before a judge of the superior court where the replevin was effected, to respond to a motion for a new bond. The judge may hear the motion and, at his discretion, order a new or further bond, conditioned like the recognizance taken on issuing the writ, signed by the obligors, and delivered to the defendant, by whom it shall be transmitted to the court to which the writ was made returnable. If the order is made while the property replevied remains in the custody of the officer, he shall not deliver the property to the plaintiff until the bond is given.

"(c) If an order for a new bond is not complied with, or if the officer fails to leave with, or at the usual place of abode of, the defendant a true and attested copy of the writ, or to retain the property in his custody, as hereinbefore provided, the writ of replevin shall be null and void.

"(d) If it appears to the court before which an action of replevin is pending that the replevin bond attached to the writ is insufficient, the court may, at its discretion, order a new or further replevin bond to be given by the plaintiff, conditioned like the recognizance taken on issuing the writ. If the plaintiff fails to comply with the order, he shall be nonsuited."

with due process, notice and an opportunity to be heard must be afforded litigants at a meaningful time and in a meaningful manner"; (internal quotation marks omitted) *Ford Motor Credit Co.* v. *B. W. Beardsley, Inc.,* supra, 17; it was consistent with the purposes of §§ 52-278a through 52-278h for the trial court to interpret the time requirement of § 52-521 (b) so as to afford the defendants a preseizure opportunity to challenge the amount and form of the bond.

We are unpersuaded by the defendants' claim that the recent United States Supreme Court decision in *Connecticut* v. *Doehr,* 500 U.S.   , 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991), required the plaintiff in this case to establish more than probable cause, namely, exigent circumstances, in order to obtain an order of replevin. In *Doehr,* "an ex parte attachment pursuant to the Connecticut [prejudgment remedy] statute in a tort action was held to violate due process . . . ." *Union Trust Co.* v. *Heggelund,* 219 Conn. 620, 624 n.3, 594 A.2d 464 (1991). In that procedural context, the court held that exigent circumstances, rather than probable cause, were required in order to justify an ex parte deprivation of the defendant's property. *Connecticut* v. *Doehr,* supra, 2116.

This case is distinguishable from *Doehr.* Here, there was no ex parte deprivation. The replevin order did not issue until after the defendants had a full opportunity for an evidentiary hearing. Furthermore, unlike the situation in *Doehr,* in this case the probable cause standard was constitutionally sufficient because the facts at issue, namely, the existence of the debt and whether it was in default, were " 'ordinarily uncomplicated matters that lend themselves to documentary proof.' " Id., 2114, quoting *Mitchell* v. *W. T. Grant Co.,* 416 U.S. 600, 609, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974). Therefore, "the risk of error was minimal . . . ." *Connecticut* v. *Doehr,* supra, 2115; see also *Union Trust Co.*

v. *Heggelund,* supra. Finally, unlike the situation in *Doehr,* where the "[p]laintiff had no existing interest in [the defendant's] real estate when he sought the attachment"; *Connecticut* v. *Doehr,* supra; in this case the plaintiff had a preexisting security interest in the property sought to be replevied.

The judgment is affirmed.

In this opinion the other justices concurred.

