**Stephen L. DelSESTO et al.**

v.

**Unknown Heirs, Devisees and/or Assigns of Janet LEWIS and Janet Lewis.**

**No. 99–38–Appeal.**

Supreme Court of Rhode Island.

June 26, 2000.

Robert J. Cosentino, Providence, for plaintiff.

Joseph H. Olaynack, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

In this boundary-line dispute, the plaintiffs, Stephen DelSesto and Nancy DelSesto, appeal from the grant of summary judgment entered in favor of their neighbor and defendant, Janet Lewis (the defendant). The case came before a single jus-

tice of this Court, who directed the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After reviewing the memoranda submitted by the parties and hearing the arguments of counsel, we are of the opinion that no such cause has been shown, and we proceed to resolve the appeal at this time.

The controversy giving rise to this litigation had it genesis in the Town of Little Compton, Rhode Island, a quaint seaside town that remains largely rural even to this day. At issue in this neighborly confrontation is the precise location of the common boundary line separating lot Nos. 19 and 20 on the town's tax assessor's plat No. 29. The boundary line runs in an east/west direction for approximately 475 feet.

Originally, both lots belonged to Winthrop Wordell (Wordell). In August 1964, Wordell conveyed lot No. 19 (the Lewis lot) to the defendant and her former husband, Joseph Lewis (Lewis), as tenants by the entirety, and that deed was duly recorded. Meanwhile, Wordell, who lived nearby, regularly harvested hay from lot No. 20 and used the field to hold an annual family Labor Day cookout.

In June 1977, Wordell wanted to sell lot No. 20 but was concerned that it might not conform to lot-size requirements contained in the town's new zoning ordinances, so he approached Lewis to discuss a land swap. As a result of that discussion, Wordell and Lewis orally agreed to realign their common boundary line.[1] In essence, the agreement increased the frontage of the Lewis lot by about five and one-half feet and decreased its rear boundary by approximately eighteen and one-half feet; concomitantly, the agreement decreased the frontage of lot No. 20 by about five and one-half feet and increased the rear boundary by approximately eighteen and one-half feet. Although Lewis lost more land

than he gained, he agreed to the land-swap deal because he obtained additional lot frontage, thus enabling him more easily to maneuver vehicles around a garage on his lot. Wordell also was satisfied because he believed his lot now conformed with the town's new zoning laws.

The deal was sealed with a handshake, which in today's world, even in Little Compton, is tantamount to an invitation to a lawsuit. Subsequently, one fine Sunday morning, the two men placed granite markers to demarcate the agreed-upon boundary-line changes. Later, Lewis planted blueberry bushes along the new boundary line.

Apparently believing that his handshake with Lewis was sufficient, and despite the fact that he had agreed to do so, Wordell failed to record a description of the boundary-line changes. The defendant, Mrs. Lewis, asserts that she was completely unaware of the "land swap" and that it was made by Lewis without her knowledge or permission. Lewis, who is now divorced from the defendant, testified that he told her about the land swap, that she did not object, and that he believes that she observed him and Wordell mark the new boundary line with the granite stones.

Shortly thereafter, in June 1977, Wordell conveyed lot No. 20 to the plaintiffs' immediate predecessor in title, Donald Crowther (Crowther), by recorded deed. That deed did not reflect the new boundary line resulting from the earlier land swap. Crowther bought the property as an investment, and was essentially an absentee landowner. His deposition revealed that although he did not have any personal knowledge about the location of the property's boundaries, he believed that the disputed rear boundary was marked by "a brick or stone thing." He testified that Wordell asked his permission to continue to mow the grass on the lot and to

---

1. The details of the alleged "land swap" are found in Lewis's deposition testimony. Wordell died before this action was commenced.

remove hay, as well as his permission to continue to hold the annual Wordell family get-together. Crowther responded by telling Wordell, "[w]hen you want to use it, use it." In their affidavits, Wordell's children stated that the mowing on the lot and the site used for the annual family parties extended as far as the newly established common boundary line between lot No. 20 and the Lewis lot.

In September 1986, Crowther conveyed lot No. 20 to the plaintiffs, Stephen and Nancy DelSesto (the plaintiffs). They duly recorded their deed which, like the deed to Crowther, contained no evidence of the earlier boundary land swap. Shortly thereafter, the plaintiffs began planning the construction of a summer home on the lot. Meanwhile, besides hiring a landscaping company to mow the field once a year, Steven DelSesto permitted Wordell to continue to mow grass and to remove hay from the lot. Actual construction of the plaintiffs' summer home began late in 1987, and was not completed until the summer of 1989. During the course of construction, excavated dirt apparently was stored on the disputed parcel at issue in this case. In 1990 or 1991, Nancy DelSesto planted a small garden in the same area.

The Lewises were divorced in 1990. As part of the divorce settlement, Mrs. Lewis became the sole record owner of the Lewis lot. In 1994, she commissioned a survey of her property. After receiving the results of the survey, she demanded that the plaintiffs not trespass on her land and demanded that they remove the garden that Mrs. DelSesto had started there. The plaintiffs apparently ignored that demand, prompting Mrs. Lewis to remove the plaintiffs' garden herself, and to erect a fence along the surveyed line.

The plaintiffs, obviously displeased with the new fence and the loss of their garden, contended that both they and their immediate predecessor in title had acquired title to the questioned property either through adverse possession or through operation of the doctrine of acquiescence. Consequently, they filed this action to quiet their title to the disputed area. In an amended complaint, they accused the defendant of trespassing on two separate occasions and sought injunctive and compensatory relief. They also recorded a letter in the land evidence records indicating the existence of a boundary line dispute between the Lewis lot and their lot. The defendant responded by filing a counterclaim seeking compensatory and punitive damages for trespass and slander of title. All was no longer quiet on the western front in the quaint town of Little Compton.

The defendant, Mrs. Lewis, moved for summary judgment on her counterclaim. She asserted that the plaintiffs could not establish title to the challenged lot area either through adverse possession or through the doctrine of acquiescence. After reviewing the record and hearing counsels' arguments, the trial justice granted the defendant's motion and entered summary judgment in her favor. The plaintiffs appeal.

■■■ The issue on appeal is whether summary judgment was appropriate in this case. "When conducting our de novo review of an order granting summary judgment, this Court employs the same legal standard that the motion justice is bound to follow." *Doe v. Gelineau,* 732 A.2d 43, 47 (R.I.1999) (citing *Superior Boiler Works, Inc. v. R.J. Sanders, Inc.,* 711 A.2d 628, 631 (R.I.1998)). "The motion justice should grant and this Court should uphold a summary judgment 'sparingly only when a review of all pleadings, affidavits, and discovery materials properly before the court demonstrates that no issue of fact material to the determination of the lawsuit is in genuine dispute.'" *Id.* at 47–48 (quoting *Superior Boiler Works, Inc.,* 711 A.2d at 631).

■■■ Adverse possession is governed by G.L.1956 § 34–7–1. "[I]n order to establish adverse possession under § 34–7–1, a claimant's possession must 'be actual,

open, notorious, hostile, under claim of right, continuous, and exclusive.'" *Anthony v. Searle*, 681 A.2d 892, 897 (R.I.1996) (quoting *Locke v. O'Brien*, 610 A.2d 552, 555 (R.I.1992)). "Further, '[a] claimant must establish the indicia of adverse possession for a period of ten years.'" *Id.* "Evidence of adverse possession must be proved by strict proof, that is, proof by clear and convincing evidence of each of the elements of adverse possession." *Id.* A claimant may "tack on the period of possession of his predecessor from whom he derived title." *Taffinder v. Thomas*, 119 R.I. 545, 549, 381 A.2d 519, 521 (1977).

In *Anthony*, after discussing the elemental requirements of adverse possession, we concluded "that the ultimate fact to be proved in adverse possession is that the claimant has acted toward the land in question 'as would an average owner, taking properly into account the geophysical nature of this land[,]'" and that "[c]ultivating land, planting trees, and making other improvements in such a manner as is usual for comparable land have been successfully relied on as proof of the required possession." *Anthony*, 681 A.2d at 898 (quoting *Gammons v. Caswell*, 447 A.2d 361, 368 (R.I.1982), and 7 Powell, *The Law of Real Property*, § 1018 at 740 (1981)).

Alternatively, a claimant may "gain title to a defendant's property by operation of the doctrine of acquiescence despite the fact that defendant had record title." *Locke*, 610 A.2d at 555 (citing *Paquin v. Guiorguiev*, 117 R.I. 239, 366 A.2d 169 (1976)). "[A] party alleging acquiescence must show that a boundary marker existed and that the parties recognized that boundary for a period equal to that prescribed in the statute of limitations to bar a reentry, or ten years." *Locke*, 610 A.2d at 556. "[A]cquiescence for the requisite number of years is 'conclusive evidence of an agreement to establish such a line and the parties will be precluded from claiming that the line so acquiesced in is not the true boundary.'" *Id.* (quoting *Rosa v. Oliveira*, 115 R.I. 277, 278–79, 342 A.2d 601, 602 (1975)). Notably, "[t]he element of recognition may be inferred from the silence of one party or their predecessors in title who are aware of the boundary." *Locke*, 610 A.2d at 556.

In the present case, we believe that there exist genuine issues of material fact that a fact finder should resolve and that precluded the trial justice's grant of summary judgment and the dismissal of the plaintiffs' action. The record indicates that the property in dispute was a grassy field for many years and was used primarily for the cultivation of hay. There remain disputed facts about who mowed and where, and the nature and extent of the contested area's use, as well as whether the defendant ever was aware of the "land swap" or had acquiesced in the new boundary line between the lots.

Consequently, for the foregoing reasons, we sustain the plaintiffs' appeal and vacate the summary judgment entered in favor of the defendant. The papers in this case are remanded to the Superior Court for a trial on the merits.