June 20, 2018

**Supreme Court**

No. 2017-127-Appeal.
(PC 14-148)

William Coscina et al.          :

v.          :

Craig J. DiPetrillo et al.          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

William Coscina et al.            :

v.            :

Craig J. DiPetrillo et al.            :

Present:  Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on March 6, 2018, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The defendants, Craig J. DiPetrillo and Rebecca M. DiPetrillo (defendants), appeal from a Superior Court judgment granting summary judgment in favor of the plaintiffs, William Coscina and Cheryl L. Bailey Coscina (plaintiffs), on count one of the plaintiffs' complaint, sounding in adverse possession.  After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that this case should be decided without further briefing or argument.  We vacate the judgment of the Superior Court.

**Facts and Travel**

The factual and procedural history of the case at bar is perplexing and unsettled.  The plaintiffs own property located at 100 Paris Irons Road in Glocester (the Coscina property), and defendants own the abutting property located at 86 Paris Irons Road (the DiPetrillo property).  This appeal arises out of a boundary dispute between the parties with respect to two tracts of land known as "Cheryl's Front Pasture" and "Cheryl's Back Pasture."  Although both tracts are part

of the DiPetrillo property, plaintiffs claim that they used both of these tracts as their own property for more than thirty-six years. The complaint alleged that Cheryl began using the front pasture and back pasture soon after she purchased the property in 1979, and that William, Cheryl's husband, began using the tracts in 2008.[1] With respect to the front pasture, plaintiffs claim that Cheryl used this area to keep farm animals and that her children rode all-terrain vehicles (ATVs) in that area as well. As to the back pasture, plaintiffs allege that Cheryl "re establish[ed] a neglected overgrown pasture by cutting saplings and small trees, clearing brush and continually mowing the pasture * * *." The plaintiffs' complaint further alleged that plaintiffs installed and maintained six-foot metal posts along the boundary line between Cheryl's Back Pasture and the DiPetrillo property, and maintained a stone wall along the boundary line of Cheryl's Front Pasture and the DiPetrillo property. The defendants purchased the 86 Paris Irons Road property in October 2013.

On February 4, 2014, plaintiffs filed a four-count first amended complaint. In count one, plaintiffs requested that they be adjudged the rightful owners of Cheryl's Front Pasture and Cheryl's Back Pasture by virtue of adverse possession; they alleged that Cheryl used both tracts for a period in excess of ten years, and that their use of the tracts was actual, open, notorious, hostile, continuous, exclusive, and under a claim of right. In counts two and three, plaintiffs sought injunctive relief and declaratory relief, respectively. In count four, plaintiffs alleged that the stone wall that encloses Cheryl's Front Pasture has been acknowledged as the boundary line between the parties' properties for a period in excess of ten years. In their answer to plaintiffs'

---

[1] Cheryl Coscina purchased the property at 100 Paris Irons Road with her then husband, Calvin C. Bailey. Mr. Bailey resided at the property with Cheryl from 1979 until 2004. In 2008, a three-tenths interest in the 100 Paris Irons Road property was conveyed to William Coscina, Cheryl's current husband, with whom she resides at the property.

complaint, defendants denied the allegations and filed a counterclaim seeking to quiet title with respect to the areas in dispute.

On May 22, 2015, plaintiffs moved for summary judgment on all four counts of the complaint and on defendants' counterclaim. In support of their motion, plaintiffs submitted affidavits, maps, and photographic evidence of the property.[2] Appended to each of the nineteen affidavits was a copy of a land survey similar to the land survey attached to plaintiffs' complaint, but with additional handwritten notes identifying the front and back pastures, a horse enclosure, and woods to the west of the back pasture. The defendants filed an objection to plaintiffs' motion for summary judgment on the basis of alleged inconsistencies with respect to the boundaries of the areas in dispute. Specifically, defendants claimed that the area demarcated as Cheryl's Front Pasture in the affidavits was different from the area that had been identified as Cheryl's Front Pasture in a demand letter that plaintiffs sent to defendants before this action was filed. The defendants also contended that plaintiffs had changed their allegations regarding the stone wall boundary divider. The defendants also argued that the "form" style affidavits submitted by plaintiffs contained conclusions of law and were simply "boilerplate." Finally, defendants averred that plaintiffs failed to provide an affidavit from a civil engineer or land surveyor with respect to the boundaries of the claimed tracts. Counsel for plaintiffs responded to defendants' objection by filing her own affidavit declaring that she had prepared the handwritten notes on the copy of the land survey attached to the affidavits in support of plaintiffs' motion for summary judgment.

---

[2] Affidavits were submitted by Cheryl, William, Cheryl's ex-husband Calvin Bailey, and sixteen other individuals. All nineteen affidavits confirmed plaintiffs' averments with respect to their use of the pastures in dispute.

A hearing on plaintiffs' motion for summary judgment was held on July 14, 2015. The hearing justice noted that a metes and bounds description of Cheryl's Back Pasture was not set forth on the survey that was attached to the complaint, and he questioned how a judgment for adverse possession could be entered without a metes and bounds description of the back pasture. The defendants agreed with the hearing justice's concern, arguing that a material issue of fact existed because the survey that plaintiffs submitted did not contain a metes and bounds description of the back pasture and because the boundaries of the contested areas kept changing:

> "[COUNSEL FOR DEFENDANTS]: But in each of the surveys or self-purported surveys that have been presented, that area changes. In fact, at some point it's straight down. At some point it's curved. There is about three or four different plot plans that have been introduced that differentiate that whole side yard, and it's the contention of the defendants that they did use some of it. They may have used some of it but they're claiming more and more of that and each time we come or get documentation regarding it, that side pasture or back pasture continues to change and that's been the issue on the dimensions and the property lines itself."

Nonetheless, the hearing justice granted plaintiffs' motion for summary judgment solely as to the adverse possession count. Although the hearing justice found no genuine issue of material fact as to whether plaintiffs had established ownership by adverse possession, he was still troubled by the vagueness of the purported boundary line:

> "So the [c]ourt finds there is no genuine issue of material fact as to whether or not there has been adverse possession of the D'Petrillos' property. The [c]ourt, however, does believe there is an issue of fact as to what is the actual boundary line for purposes of preparing a judgment of [metes] and bounds on the back line. I believe it's been explained there that it goes to the woods so the [c]ourt is going to grant—it's not quite liability in damages because there are no damages, you're not seeking damages, but I'm granting summary judgment on the fact that there has been adverse possession."

- 4 -

The hearing justice suggested that a survey of the back pasture was needed and that a more accurate survey of the front pasture should be conducted. Despite granting summary judgment for adverse possession, the hearing justice decided to allow defendants to dispute whether or not "that is the actual boundary[.]" An order was entered on August 13, 2015, granting plaintiffs' motion for summary judgment as to the first count of their complaint, denying summary judgment with respect to the remaining counts of their complaint and defendants' counterclaim, and requiring plaintiffs to submit a new survey of the property in dispute to the court with an accurate metes and bounds description of the boundary lines. However, according to defendants, plaintiffs were observed clearing the disputed property after this ruling.

On August 20, 2015, plaintiffs filed a motion for entry of judgment for adverse possession and submitted a new survey of Cheryl's Front Pasture and Cheryl's Back Pasture containing a metes and bounds description. The defendants objected to plaintiffs' motion due to the presence of disputed material facts based on their contention that plaintiffs have "continuously evolved and changed [the shape and size of the land in question] just during the course of this proceeding." The matter was set down for an evidentiary hearing.

An evidentiary hearing took place on the question of where the boundary lines existed for the parcels. The plaintiffs presented the testimony of Richard Bzdyra, a licensed land surveyor, who testified that an ancient stone wall marked the boundary of the front pasture and that a demarcation of a tree line marked the boundary of the back pasture.[3] Also, Mr. DiPetrillo testified at the hearing about the uncertainties surrounding the extent of plaintiffs' claims. He testified that he used the back pasture to host cookouts and as a throughway into the woods, and that he cut the grass. According to Mr. DiPetrillo, when plaintiffs first informed him that they

---

[3] This testimony conflicted with the allegations in plaintiffs' complaint that six-foot metal posts actually marked the boundary of the back pasture.

- 5 -

were claiming part of his property by adverse possession, Cheryl's Back Pasture was not part of the claim. Notably, Mr. DiPetrillo testified that, the day after the July 14, 2015 summary judgment hearing, there was an individual "plowing the overgrowth, trees and everything further back [on the back pasture]." The hearing justice acknowledged this factual dispute, noting that plaintiffs did not deny that someone had plowed the overgrowth on the back pasture after summary judgment was granted on the adverse possession claim. The hearing justice later asked Cheryl whether this was an area she had cleared in the past, to which Cheryl replied, "I used to clear that area." The hearing justice ultimately determined that this newly-cleared area was included in Cheryl's Back Pasture as set forth in the affidavits:

> "I wanted to know whether the cleared area was included in what she was referring to [in] her affidavit or not because that's the only thing in my mind. If it had not been, then the line would have gone to the cleared area but she said it was, and it was consistent with her affidavit and clearing it, whether she violated the consent agreement or not, is not before me but it is obvious in my mind that this cleared area was part of the back pasture."

The hearing justice found Bzdyra to be a credible witness and accepted his testimony with respect to the boundary lines of both the front and back pastures.

The hearing justice stated that he was reluctant to grant plaintiffs' motion for entry of judgment in light of the unresolved remaining claims in plaintiffs' complaint and defendants' counterclaim. However, after the parties filed a stipulation agreeing to dismiss the remaining counts of plaintiffs' complaint and all counts of defendants' counterclaim, judgment entered on November 25, 2015, in favor of plaintiffs on count one of their complaint. The defendants timely appealed.

On appeal, defendants argue that: (1) summary judgment was improper because an issue of material fact existed with respect to the boundary line of the back pasture; (2) the survey

submitted by plaintiffs in support of summary judgment would not have been admissible at trial because it was unauthenticated and contained handwritten notes inserted by plaintiffs' counsel; and (3) the evidentiary hearing, conducted by the hearing justice, did not comply with either Rule 56(c) or Rule 54(b) of the Superior Court Rules of Civil Procedure.[4]

---

[4] Rule 56(c) of the Superior Court Rules of Civil Procedure, titled "Motion and Proceedings Thereon," provides:

> "The motion shall be served at least ten (10) days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, documents, electronically stored information, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Rule 54(b) of the Superior Court Rules of Civil Procedure, titled "Judgment Upon Multiple Claims or Involving Multiple Parties," provides:

> "When more than one (1) claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one (1) or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

- 7 -

This Court reviews a trial justice's decision granting summary judgment *de novo*. *See Sola v. Leighton*, 45 A.3d 502, 506 (R.I. 2012); *Lynch v. Spirit Rent-A-Car, Inc.*, 965 A.2d 417, 424 (R.I. 2009). It is well established that "[s]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." *Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446, 451 (R.I. 2013). Further, "[s]ummary judgment is appropriate only when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law.'" *Sola*, 45 A.3d at 506 (quoting *Plunkett v. State*, 869 A.2d 1185, 1187 (R.I. 2005)).

**Analysis**

The defendants aver that the hearing justice erred by granting summary judgment on plaintiffs' adverse possession claim. We note at the outset that, when he issued his bench decision, the hearing justice merely concluded that there were no genuine issues of material fact as to adverse possession, but made no reference to whether adverse possession by plaintiffs had been established by clear and convincing evidence, which is an essential conclusion in adverse possession cases; nor did the hearing justice reference the elements essential to a claim for adverse possession. *See Carnevale v. Dupee*, 783 A.2d 404, 410 (R.I. 2001) ("The party claiming title by adverse possession must prove each of these elements by 'strict proof, that is, proof by clear and convincing evidence.'") (quoting *Anthony v. Searle*, 681 A.2d 892, 897 (R.I. 1996)). The hearing justice stated:

> "[T]he [c]ourt finds there is no genuine issue of material fact as to whether or not there has been adverse possession of the DiPetrillos' property. The [c]ourt, however, does believe there is an issue of fact as to what is the actual boundary line for purposes

of preparing a judgment of [metes] and bounds on the back line. * * * I'm granting summary judgment on the fact that there has been adverse possession."

It is well settled that, "in order to establish adverse possession under [G.L. 1956] § 34-7-1,[5] a claimant's possession must be actual, open, notorious, hostile, under claim of right, continuous, and exclusive." *Anthony*, 681 A.2d at 897 (quoting *Locke v. O'Brien*, 610 A.2d 552, 555 (R.I. 1992)). The hearing justice's bench decision was devoid of any proper adverse possession analysis and was conclusory in nature, particularly where the dimensions of the claimed land were in dispute. In *Anthony*, this Court promulgated the elemental requirements for adverse possession and declared, *inter alia*, that "[a] claimant makes a showing that the possession was 'hostile' if a determination is made 'that the possession of the occupier is to a visible line *in all events*, regardless of the location of the true boundary line.'" *Id.* at 898 (emphasis added) (quoting *LaFreniere v. Sprague*, 108 R.I. 43, 50, 271 A.2d 819, 822 (1970)). We think it to be clear error to simply declare that plaintiffs proved adverse possession without addressing each element and the uncontradicted evidence that supports it.

---

[5] General Laws 1956 § 34-7-1, titled "Conclusive title by peaceful possession under claim of title," provides:

> "Where any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any *lands, tenements or hereditaments* for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action." (Emphasis added.)

Clearly, an accurate description of the "lands, tenements or hereditaments" is an essential element of the claim itself and not an issue that can be decided in the absence of a trial. The hearing justice based his decision granting summary judgment largely on the affidavits that plaintiffs submitted. The survey appended to each affidavit upon which the hearing justice relied was neither a final nor accurate survey of the property in dispute. After the hearing justice granted summary judgment, plaintiffs commissioned a new survey of the property containing a metes and bounds description, which may or may not have been based on activities occurring on the property after the July 14, 2015 hearing and which significantly differed from the original survey. The boundary lines to each portion of the claimed property appear different, and the area appears to have been expanded. We are of the opinion that it was error for the hearing justice to resolve this contested issue of fact between the parties. Simply put, without a clear demarcation of the boundary lines, and without clear and convincing evidence of the areas that were adversely possessed, there can be no summary judgment. *See DelSesto v. Lewis*, 754 A.2d 91, 95 (R.I. 2000) (holding that disputed material facts about the nature and extent of the contested area's use precluded summary judgment); *see also Anthony*, 681 A.2d at 898 ("[T]he ultimate fact to be proved in adverse possession is that the claimant has acted toward the land in question as would an average owner, *taking properly into account the geophysical nature of this land*.") (emphasis added) (quoting *Gammons v. Caswell*, 447 A.2d 361, 368 (R.I. 1982)). There were genuine issues of material fact as to the boundaries of the disputed areas in the present case that were not capable of resolution under Rule 56.

As a general matter, claims for adverse possession are not susceptible to summary judgment due to the fact-intensive nature of these actions. *See M & B Realty, Inc. v. Duval*, 767 A.2d 60, 65 (R.I. 2001); *DelSesto*, 754 A.2d at 95. The parties acknowledged that this Court has

not had occasion to uphold a grant of summary judgment on an adverse possession claim because these cases are fact-driven. At the evidentiary hearing in the case at bar, there was conflicting evidence with respect to the boundary lines of the contested parcels that differed from the affidavits upon which the hearing justice relied. The plaintiffs' affidavits do not clearly describe the boundary of the back pasture, but declare that the plaintiffs erected and maintained *a fence* along the back pasture; however, in their memorandum in support of summary judgment filed on May 22, 2015, the plaintiffs argued that *a stone wall* enclosed the back pasture. This is conflicting evidence. The hearing justice acknowledged these disputed factual issues, noting that "there is an issue of fact as to what is the actual boundary line * * *." In an attempt to resolve these factual issues, the hearing justice ordered an evidentiary hearing regarding the boundary of the back pasture and engaged in fact-finding, which is not permitted at the summary judgment stage.[6] Accordingly, we conclude that granting summary judgment, in light of obvious disputed material facts, was erroneous. *See Sola*, 45 A.3d at 506. Because we are vacating the judgment of the Superior Court and remanding this case for trial, we not need address the plaintiffs' remaining appellate arguments.

## Conclusion

For the reasons set forth herein, we vacate the judgment of the Superior Court. The papers in this case may be remanded to the Superior Court for further proceedings.

Justice Flaherty did not participate.

---

[6] We note that Rule 56(c) permits the entry of an interlocutory summary judgment on "the issue of liability alone although there is a genuine issue as to the amount of damages." While that portion of Rule 56 is unrelated to this case, which did not involve a claim for damages, we observe that the outstanding issue of damages contemplated in the rule must be resolved at trial.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | William Coscina et al. v. Craig J. DiPetrillo et al. |
| **Case Number** | No. 2017-127-Appeal.<br>(PC 14-148) |
| **Date Opinion Filed** | June 20, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Nicole M. Labonte, Esq.<br>Richard E. Palumbo, Jr., Esq. |
| | For Defendants:<br><br>Dennis T. Grieco II, Esq.<br>Michael J. Lepizzera, Jr., Esq.<br>Matthew J. Libby, Esq. |